350 October 17, 2013 No. 52

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Petitioner on Review*,

*v.*

KENNETH HERBERT MILLS,
*Respondent on Review.*

(CC D100632T; CA A145446; SC S060485)

En Banc

On review from the Court of Appeals.*

Argued and submitted March 12, 2013 at Willamette University College of Law, Salem.

Ryan Kahn, Assistant Attorney General, Salem, argued the cause and filed the brief for petitioner on review. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Morgen E. Daniels, Deputy Public Defender, Salem, argued the cause and filed the brief for respondent on review. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

LANDAU, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

_____
* Appeal from Washington County Circuit Court, Michael J. McElligott, Judge. 248 Or App 648, 274 P3d 230 (2012).

## LANDAU, J.

Article I, section 11, of the Oregon Constitution provides that, among other things, "[i]n all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed." At issue in this case is whether that provision implicitly requires the state to treat the location where the offense was committed as a material allegation, which it must prove beyond a reasonable doubt. The state contends that nothing in the wording of Article I, section 11, requires such proof. In the state's view, the constitution merely grants a defendant a right to object—or waive objection—to improper venue, and in this case defendant waived that right by failing to assert it before trial. Defendant argues that, although the state is correct that Article I, section 11, itself does not say anything about requiring proof of venue as a part of the state's case, this court's cases nevertheless have read the section to impose that requirement, and, in this case, the state failed to satisfy it.

The Court of Appeals, adhering to those cases, concluded that the state was required to establish venue beyond a reasonable doubt and that, in this case, the state failed to meet that burden. *State v. Mills*, 248 Or App 648, 274 P3d 230 (2012). The court consequently reversed the judgment of the trial court, which had rested on that court's conclusion that the state's proof of venue was adequate. We conclude that our earlier cases were mistaken in reading Article I, section 11, to require the state to prove venue as a material allegation. The venue guarantee of that constitutional provision recognizes a right to a trial in a particular place, which right must be asserted before trial. We further conclude, however, that it would be unfair to hold that defendant in this case forfeited that right, given that, under the law at the time of trial, he was permitted to raise the issue during trial. We therefore reverse the decision of the Court of Appeals, reverse the judgment of the circuit court, and remand for further proceedings.

## I.   FACTS

The relevant facts are few and undisputed. A City of North Plains police officer determined that defendant was

driving a vehicle at 80 miles per hour near milepost 57 on Highway 26. The officer pursued defendant and stopped him near milepost 56. The officer asked defendant for his license, and defendant admitted that his license was suspended.

The state charged defendant with driving while his license was revoked. ORS 811.182. Defendant waived a jury, and the case was tried to the court. After the state rested, defendant moved for a judgment of acquittal, arguing that the state had failed to prove beyond a reasonable doubt that he had committed the offense in Washington County. The state argued that the evidence was sufficient to permit a reasonable factfinder to determine that defendant had committed the offense in North Plains, between mileposts 56 and 57 on Highway 26, all of which are located in Washington County. The trial court agreed with the state, denied defendant's motion, and ultimately convicted defendant of the charged offense.

Defendant appealed, arguing that the facts adduced at trial were insufficient to satisfy the state's burden of proving venue beyond a reasonable doubt. The state first argued that venue should not be treated as a material allegation of an indictment that must be proved beyond a reasonable doubt. In the alternative, the state argued that the evidence that it had provided at trial sufficed to meet that burden.

The Court of Appeals reversed. The court first rejected the state's argument that venue should not be treated as a material element of the state's case, concluding that the argument was foreclosed by this court's contrary case law. 248 Or App at 651 n 1. The court also rejected the state's argument about the sufficiency of the evidence, concluding that it "would require speculation for a factfinder to infer that North Plains or mileposts 56 and 57 on Highway 26 are in Washington County." *Id.* at 653.

## II.   ANALYSIS

On review, the state renews its argument that it should not be required to prove venue as a material allegation. The state acknowledges that this court has reached a contrary conclusion in a number of decisions. According to the state, we should reconsider those decisions because none of them

reflects any analysis. All simply state the conclusion that Article I, section 11, requires the state to treat venue as a material allegation, which, the state notes, Article I, section 11, does not actually say. In that regard, the state observes that Article I, section 11, declares a number of different rights—including a public trial, an impartial jury, a copy of the charging instrument, and the ability to meet witnesses face to face—none of which requires the state to prove anything as part of its case. The state contends that it makes no sense to select one of those rights and treat it as a material allegation that must be affirmatively proved at trial.

For his part, defendant acknowledges the state's point that the bare text of Article I, section 11, does not say anything about treating venue as a material allegation that the state must prove beyond a reasonable doubt:

> "It is true that nothing in the plain text of section 11 requires the state to prove to the jury that a defendant's trial is public or that the jury is impartial. Likewise nothing in the text demands that the prosecution prove beyond a reasonable doubt that the crime took place in the county alleged in the charging document."

Defendant nevertheless maintains that the constitution must be understood implicitly to have incorporated that requirement. According to defendant, in light of the universal common-law view that venue was a material allegation that the state was required to prove, Article I, section 11, should be understood to have incorporated that common-law rule. At all events, defendant continues, that has been the manner in which this court has long construed the state constitutional venue guarantee, and that line of cases is controlling.

The parties' arguments thus require us to determine the meaning of a provision of the original state constitution, which we accomplish by examining the text of the provision in context, the historical circumstances of the adoption of the provision, and the case law that has construed it. *Priest v. Pearce*, 314 Or 411, 415-16, 840 P2d 65 (1992). It is often stated that our goal is to determine the meaning most likely intended or understood by the framers of the constitution. *See e.g.*, *Doe v. Corp. of Presiding Bishop*, 352 Or 77, 87, 280 P3d 377 (2012) (in interpreting the constitution, the court

"attempt[s] to understand the provision, if possible, as the framers would have understood it"). That should not be understood to mean that the purpose of the *Priest* analysis is to fossilize the meaning of the state constitution so that it signifies no more than what it would have been understood to signify when adopted in the mid-nineteenth century. *State v. Davis*, 350 Or 440, 446, 256 P3d 1075 (2011) ("The purpose of that analysis is not to freeze the meaning of the state constitution in the mid-nineteenth century."). Instead, as we have more recently explained, our goal is to determine the meaning of the constitutional wording, informed by general principles that the framers would have understood were being advanced by the adoption of the constitution. *State v. Savastano*, 354 Or 64, 72, ___ P3d ___ (2013).

A.   *Textual Analysis*

We begin with the text of Article I, section 11, which provides:

> "In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offen[s]e shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor."

Or Const, Art I, § 11 (1857).[1] The phrasing of that section is significant in at least two respects that are pertinent to the issue in this case.

First, as the state correctly observes and defendant concedes, nothing in the wording of Article I, section 11, itself says anything about requiring the state to prove anything, much less requiring the state to prove the location of the commission of the offense as a material allegation beyond a reasonable doubt. By its terms, the constitutional provision guarantees an accused in a criminal proceeding a right to have the trial occur in a particular place, that is, "the county in which the offen[s]e shall have been committed." It does not specify anything about elements of proof.

---

[1] Article I, section 11, was amended in 1932 and 1934 by adding other guarantees concerning jury verdicts in first-degree murder trials.

Second, and relatedly, nothing else in Article I, section 11, says anything about matters of proof. *See Davis*, 350 Or at 463-64 (particular clauses of Article I, section 11, must be construed in the context of the provision as a whole). To the contrary, the provision lists "a panoply of trial-related rights," *State v. Harrell/Wilson*, 353 Or 247, 262, 297 P3d 461 (2013), that an accused in a criminal proceeding may assert or waive: the right to a public trial, to an impartial jury, to a trial in the county in which the offense was committed, to be heard by defendant or counsel, to demand the nature and cause of the accusation, to have a copy of the accusation, to meet witnesses face to face, and to have compulsory process. Each of those rights pertains to the conduct of a criminal trial. None pertains to matters of substantive proof. *See generally* Wayne R. LaFave, *et al.*, 4 *Criminal Procedure* § 16.1(g), 744 n 241 (3d ed 2007) (observing that those courts reading constitutional venue guarantees to require proof of venue "have not explained why the prosecution bears an obligation to prove at trial that the [venue] prerequisite is met and not that other constitutional prerequisites are met (*e.g.*, that the jury is impartial and that the case was brought to trial promptly enough ***)").

Notwithstanding the fact that there are no words that—at least by themselves—could reasonably be construed to create a requirement of proof, defendant suggests that we should understand Article I, section 11, to function as a "synecdoche." A "synecdoche" refers to a rhetorical "figure of speech by which a part is put for the whole." *Webster's Third New Int'l Dictionary* 2320 (unabridged ed 2002). In defendant's view, the reference to the subject of venue in Article I, section 11, can fairly be seen as a "marker" that implicitly incorporates not only a right to a trial in a particular place, as the provision actually states, but also a right to require the state to prove the location of the commission of the offense as a material element of the offense itself.

As other courts have observed, the rhetorical device of synecdoche is ill-suited for application to matters of legal interpretation. *See, e.g.*, *Reno v. American-Arab Anti-Discrimination Committee*, 525 US 471, 482, 119 S Ct 936, 142 L Ed 2d 940 (1999) ("Not because Congress is too

unpoetic to use synecdoche, but because that literary device is incompatible with the need for precision in legislative drafting."). That is because of the singular importance of the words included in—or omitted from—a given provision. It is simply not the province of the court to rewrite the text of the constitution to supply a provision that was not included.

That is not a matter of fastidious formalism. As this court has noted on many occasions, in construing the Oregon Constitution, the "best evidence" of what the framers of a constitutional provision intended to mean is the wording of the provision itself. *See, e.g.*, *Harrell*, 353 Or at 255 ("[t]he best evidence of the voters' intent is the text and context of the provision itself"); *Li v. State of Oregon*, 338 Or 376, 388, 110 P3d 91 (2005) ("the text of the constitutional provision itself provides the best evidence of the voters' intent"). Only the text of the constitution received the consideration and approval of the voters who approved it, giving it the effect of law. *Cf. State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009) ("there is no more persuasive evidence of the intent of the legislature" than a statute's text because "[o]nly the text of a statute receives the consideration and approval of a majority of the members of the legislature, as required to have the effect of law"). Consequently, courts are obliged to respect not only what constitutional provisions state, but also what they do not. *See, e.g.*, *George v. Courtney*, 344 Or 76, 85-86, 176 P3d 1265 (2008) (declining to read into Article IV, section 10a, limitations on legislative authority that are not stated in its text).

Aside from that, the rhetorical device of synecdoche assumes a well-understood relationship between the part actually stated and the whole that is unstated. The classic examples are references to body parts—"head count," "counting noses," "all hands"—to connote whole persons, references to sailing ships as "sails," and the like. In this case, the relationship between what Article I, section 11, says and what defendant suggests it implicitly signifies is not at all so clear.

Defendant nevertheless argues that the connection between what Article I, section 11, says and what it should

be taken to mean becomes clearer when the historical circumstances of the adoption of the provision are taken into account. We turn to consideration of those circumstances.

B.  *Historical Circumstances*

In defendant's view, at the time of the adoption of the Oregon Constitution in 1857, the "dominant rule in force around the country" required the state to prove venue as a material element of its case. In support, defendant cites nineteenth-century treatises and some three-dozen examples of mid-nineteenth century trial and appellate court decisions, each of which refers to the prosecution's obligation to prove venue as part of its substantive case. In that context, he contends, there can be "little doubt that [the framers] intended section 11 to embody that rule."

The problem with defendant's argument is that it conflates two distinct legal rules—the common-law rule requiring proof of venue to establish the jurisdiction of criminal courts and a defendant's constitutional right to insist on trial where the crime was committed. The two rules were derived from different historical sources and were developed to accomplish different purposes.

1.  *The Common-Law Rules of Venue and Vicinage*

At common law, it was long the general rule that proof of venue was necessary to establish the jurisdiction of the court presiding over the criminal trial. The rule had its roots in early notions about the authority of juries, which was limited to the particular communities from which they were selected. *See* Allan R. Stein, *Forum* Non Conveniens *and the Redundancy of Court-Access Doctrine*, 133 U Pa L Rev 781, 798 (1985) ("The earliest venue rules grew out of the jury system.").

The first jurors were witnesses selected precisely because of their familiarity with the locality and its inhabitants. *See generally* John Marshall Mitnick, *From Neighbor-Witness to Judge of Proofs: The Transformation of the English Civil Juror*, 32 Am J Legal Hist 201 (1988). As Coke

explained in his *First Institutes*, jurors were drawn from the vicinity of the crime—the "vicinage"—because "the inhabitants whereof may have the better and more certaine knowledge of the fact." 1 Sir Edward Coke, *The First Part of the Institutes of the Laws of England* \*125a.

The authority of jurors stopped at the bounds of the county from which they had been appointed. *See generally* Theodore F.T. Plucknett, *A Concise History of the Common Law* 127 (1956) ("[The jury's] object was either to present the suspicions of the countryside, or, in the case of a petty jury, to express its final opinion. Consequently, the jury as a whole must come from the county concerned."). They had no power to "take knowledge" of acts or events that might have taken place beyond the county boundaries. *See* Act of Parliament, 1548, 2 & 3 Edw. 6, ch. 24 (Eng.) (jurors under common law previously could "take no knowledge" of events in other counties); *see also* Albert Levitt, *Jurisdiction over Crimes: The Territorial Commission Theory*, 16 J Am Inst Crim L & Criminology 316, 327-28 (1925) ("The inquisitorial range of the jury was limited to the territorial area inhabited by the community."); Glanville Williams, *Venue and the Ambit of Criminal Law*, 81 L Q Rev 276, 276 (1965) ("The ancient requirement of venue meant in effect that the jurisdiction of each court of assize was limited to its own county; and the criminal courts as a whole were therefore limited to what occurred in 'the bodies' of the counties[.]'"). Indeed, a jury's pronouncement on matters that took place beyond county boundaries was considered grounds for a mistrial.

Over time, the role of juries shifted from that of interested witnesses to neutral and detached fact finders. But assumptions about their underlying authority remained unaltered: The authority of jurors did not go beyond the boundaries of the county from which they were selected. *See generally* LaFave, 4 *Criminal Procedure* § 16.1(c) (common-law venue rule "is commonly traced to the use of the early jury as a factfinding body that relied upon its own knowledge"). Consequently, to establish the jury's authority and thus avoid a later mistrial, prosecutors were required to prove that venue was proper.

The rule became a well-settled principle of nineteenth-century common-law criminal practice. *See, e.g.*, J. Chitty, *The Criminal Law* 557-58 (1819) ("The prosecutor must in general be prepared to show that the offense was committed in the county where the venue is laid."). But the rule was a matter of jurisdiction, not of individual right. Thus, for example, Wharton's treatise on American criminal law stated that "venue must correspond with the jurisdiction of the court." Francis Wharton, 2 *A Treatise on the Criminal Law of the United States* § 277 (1857). "It is sufficient," Wharton explained, "to prove that [the facts] occurred within the county or other extent of the court's jurisdiction, otherwise the defendant must be acquitted." *Id.* § 601.[2]

The cases that defendant in this case proffers to this court illustrate the point. Of the several dozen early- to mid-nineteenth century cases that defendant cites, not one concerns a state constitutional right to a jury trial in a particular place. All but one concern the common-law rule that venue must be proved to establish the court's jurisdiction and the jury's authority. As the North Carolina Supreme Court explained in *State v. Fish*, 26 NC 219 (1844), "[a]n indictment states the place where the offen[s]e was committed, to enable the court to see that it is within its jurisdiction. *** The jurisdiction of crimes is local, and generally the Superior Court of a particular county is restricted to offen[s]es committed within that county." *Id.* at 220.

In *Turner v. State*, 28 Miss 684 (1855), for another example, the plaintiff was convicted of manslaughter in Yazoo County. On appeal, he argued that the state had failed to establish venue, and the Mississippi High Court of Errors and Appeals agreed, explaining:

"[I]t is very clear that the proof was insufficient. There was no evidence offered, either direct or circumstantial, which showed that the death occurred in the county of Yazoo, in

---

[2] As LaFave explains, it was common for states not to give all their trial courts authority to try the full range of violations of state criminal law. Some states allocated different authority to different courts based on the nature or level of offense, while others divided courts into "jurisdictional territories," measured by the county or municipal boundaries of their judicial districts. LaFave, 4 *Criminal Procedure* § 16.1(a). Indeed, that practice is common to this day in states that have not adopted unified state judicial systems. *Id*.

> which the bill of indictment was preferred. This was essential to give the circuit court of that county jurisdiction."

*Id.* at 685. Similarly, in *Holeman v. State*, 13 Ark 105 (1852), the defendant was convicted of larceny. On appeal, she argued that the state had failed to establish venue, and the Arkansas Supreme Court agreed, explaining that, "[t]here is an utter failure in the proof as to the place where the supposed offense was committed. This would of itself constitute a fatal objection to the judgment, as without such proof there is a manifest defect of jurisdiction." *Id.* at 106.[3]

The one exception, if it may be called that, is *Mitchum v. State*, 11 Ga 615 (1852), which was controlled by a constitutional provision expressly providing that the criminal jurisdiction of the superior courts extended only to the county in which the crime was committed. In that context, the court noted that, "to give jurisdiction, therefore, it was necessary to prove that [the crime] was committed in the County where the Court was sitting." *Id.* at 616.

2. *The Constitutional Venue Right*

Federal and state constitutional provisions concerning venue had a different source and were directed at a different concern. As we have noted, the rule that criminal trials must take place where the offense occurred (venue) and that juries must be drawn from that area (vicinage) took root in this country early on. In the years leading up to the American Revolution, however, tensions between the colonies—Massachusetts, in particular—and the British authorities led Parliament first to denounce, in 1768, "daring insults offered to his Majesty's authority, and audacious usurpations of the powers of government" and later to adopt, in 1769, a resolution requiring the trial of such treasonous acts in England. *See generally* William Wirt Blume, *The Place of Trial of Criminal Cases*, 43 Mich L Rev 59, 62-66

---

[3] *See also Vaughan v. State*, 11 Miss 553 (1844) ("It is scarcely necessary to add, that the offence must be proved to have been committed in the county, as charged in the indictment, in order to bring it within the jurisdiction of the Court."); *State v. Chaney*, 43 SCL 438 (1856) (rejecting, based on sufficiency of evidence, defendant's asserted "defect in the evidence to show[] that the offen[s]e was perpetrated in the jurisdiction"); *Commonwealth v. Heikes*, 26 Pa 513 (1856) ("As a general rule, place is only essential upon the question of jurisdiction.").

(1944) (detailing history).[4] The problem—from the British point of view—was that colonial juries "all but nullified the law of seditious libel in the colonies." Albert W. Alschuler & Andrew G. Deiss, *A Brief History of the Criminal Jury in the United States*, 61 U Chi L Rev 867, 874 (1994).

Reaction from the colonies was swift. The Virginia House of Burgesses, after hearing the news of Parliament's actions, adopted resolutions, known as the "Virginia Resolves," declaring that

> "'all Trials for Treason, Misprison of Treason, or for any Felony or Crime whatsoever, committed and done in this his Majesty's said Colony and Dominion, by any Person or Persons residing therein, ought of Right to be had, and conducted in and before his Majesty's Courts, held within the said Colony."

Blume, 43 Mich L Rev at 64. Similar resolutions from other colonies soon followed. *Id*. at 63-65. Eventually, the Declaration of Independence itself denounced King George III "for transporting us beyond Seas, to be tried for pretended offences."

The frustration of the colonists with the British practice of transporting those accused of treason to England for trial led to the inclusion of a venue provision in the United States Constitution, Article III, section 2, which requires that the "Trial of all Crimes * * * shall be held in the State where the said Crimes shall have been committed." In addition, the Sixth Amendment includes a vicinage provision, guaranteeing that, in "all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed."

It is widely acknowledged that both those provisions grew out of the framers' concerns with the British

---

[4] Specifically, Parliament voted to revive a statute from the days of Henry VIII, which authorized trial for treason committed outside the "realm" to be tried before the King's Bench, in England. *See generally* Drew L. Kershen, *Vicinage*, 29 Okla L Rev 801, 805-07 (1976). In 1772 and 1774, Parliament again passed laws in response to its dissatisfaction with the way its criminal laws were being enforced in colonial courts. One, 12 Geo III, c. 24 (1772), provided that persons charged with destroying shipping equipment and supplies outside the realm could be tried in England. The other, 14 Geo III, c. 39 (1774), provided that persons charged with certain capital crimes would also be held in England.

practice of trying colonists in distant England. *See gener-ally* Charles Alan Wright & Peter J. Henning, 2 *Federal Practice and Procedure* § 301 (4th ed 2009) (tracing history of federal constitutional venue and vicinage provisions to Virginia Resolves and reaction to deportation of colonists to England for trial); Comment, *Multi-Venue and the Obscenity Statutes*, 115 U Pa L Rev 399, 413 (1967) ("the dangers the framers sought to guard against were clearly perceived" as responding to "a recent history of forced deportations to distant places for trial"). Their purpose was avoiding hardship and inconvenience. As the United States Supreme Court explained in *Hyde v. Shine*, 199 US 62, 25 S Ct 760, 50 L Ed 90 (1905),

> "we do not wish to be understood as approving the practice of indicting citizens of distant states in the courts of this District, where an indictment will lie in the state of the domicil[e] of such person, unless in exceptional cases, where the circumstances seem to demand that this course shall be taken. To require a citizen to undertake a long journey across the continent to face his accusers, and to incur the expense of taking his witnesses, and of employing counsel in a distant city, involves a serious hardship, to which he ought not to be subjected if the case can be tried in a court of his own jurisdiction."

*Id.* at 78. There was also concern that requiring an accused to travel great distances for trial posed a threat to a fair trial. Kershen, 29 Okla L Rev at 808 ("it seems clear that limitation of venue was considered to be necessary to insure a fair trial for persons accused of crime").

State constitutional venue and vicinage guarantees were largely modeled after the Sixth Amendment. *See* Blume, 43 Mich L Rev at 67 (early state constitutional venue provisions "were products of the body of thought which produced the Federal Constitution and together with the provisions of that instrument established the patterns of language used in the later constitutions"). And their concern likewise was the hardship, inconvenience, and unfairness of requiring defendants to travel great distances for trial. *Id.* at 78 ("The problem of the early constitution writers was to guard against the dangers of transportation[.]").

The constitutional venue and vicinage guarantees were understood as rights of a criminal defendant, which the defendant could raise or waive. Nothing in the historical record suggests that the federal constitutional jury guarantees were designed to preserve common-law notions of local criminal court jurisdiction. Likewise, nothing in the historical record suggests that the constitutional guarantees were designed, in effect, to codify common-law criminal pleading and proof requirements.

That is borne out by the nineteenth-century case law. As we have noted above, a number of states' appellate court decisions declare that venue must be pleaded and proven. But those decisions are common-law, not constitutional, decisions. The only mention of the constitutional venue right in antebellum cases concerns whether defendants properly invoked or waived their constitutional venue right by moving for a change of venue or the constitutionality of statutes authorizing trial in places other than the county in which the crime was committed. As the Missouri Supreme Court explained in *State v. Wetherford*, 25 Mo 439, 440 (1857), "[t]he constitutional right of trial by jury of the vicinage is intended for the benefit and protection of the accused," which could be "waived, as it was by defendant, and a change of venue was procured."[5] Indeed, defendant has not cited a single antebellum state court decision referring to the state constitutional venue right as the source of a requirement that the state prove venue as part of its substantive case, and we are aware of none.

### 3. *Adoption of the Oregon Constitution*

It was in that context that the framers of the Oregon Constitution drafted and adopted Article I, section 11. The provision was adopted as part of the original state constitution in 1857, without recorded debate or discussion. Charles

---

[5] *See also Ex parte Banks*, 28 Ala 28 (1856) (change of venue); *Starry v. Winning*, 7 Ind 311 (1855) (constitutionality of statute providing for change of venue); *Manly v. State*, 7 Md 135 (1854) (change of venue); *State v. Alverez*, 7 La Ann 283 (1852) (change of venue); *Ex parte Block*, 11 Ark 281 (1850) (constitutionality of statute providing for change of venue); *State v. Burris*, 4 Harr 582 (Del 1847) (change of venue); *Steerman v. State*, 10 Mo 503 (1847) (constitutionality of statute authorizing change of venue); *Dula v. State*, 16 Tenn 511 (1835) (constitutionality of statute authorizing change of venue).

Henry Carey ed., *The Oregon Constitution and Proceedings and Debates of the Constitutional Convention of 1857*, 310 (1926); *see also* Claudia Burton & Andrew Grade, *A Legislative History of the Oregon Constitution of 1857—Part I (Articles I and II)*, 37 Will L Rev 469, 518 (2001) (Article I, section 11, adopted without reported discussion or debate).

Its wording appears to have been derived from Article I, section 13, of the Indiana Constitution of 1851. W.C. Palmer, *The Sources of the Oregon Constitution*, 5 Or L Rev 200, 201 (1926). The records of the constitutional convention that produced the 1851 Indiana Constitution contain no trace of debate or discussion concerning that state's constitutional venue guarantee, either. *See The Report of the Debates and Proceedings of the Convention for the Revision of the Constitution of Indiana* 187 (1850).

Case law about venue from Indiana before, and even after, the time of the adoption of the Oregon Constitution is consistent with the other antebellum cases that we have mentioned, in that it consistently refers to the rule requiring proof of venue as a common-law rule pertaining to a local court's criminal jurisdiction. In *Jackson v. State*, 19 Ind 312 (1862), for example, the defendant was charged with unlawful sale of intoxicating liquor in Grant County, Indiana. At trial, the evidence showed that the transaction took place "in Grant County," without reference to any state. The Indiana Supreme Court concluded that the evidence was insufficient to establish venue because "the evidence does not show that the sale was within the jurisdiction of the Court." *Id*. at 313. The decision does not mention the Indiana Constitution. *See also Snyder v. State*, 5 Ind 194 (1854) (citing only common-law venue rule); *Harker v. State*, 8 Blackf 540 (1847) (same).

### 4.   *Significance of the Historical Record*

The historical context of the venue clause of Article I, section 11, is as significant for what it does not show as for what it shows. It makes clear that defendant is incorrect in asserting that there can be "little doubt" that the framers, in adopting the venue guarantee, intended to adopt the common-law rule requiring the state to prove venue as a material element of its case. There is actually significant doubt about the assertion. As we have noted, the framers

might have understood that the common law required the state to establish venue as a jurisdictional prerequisite to prosecution in a particular county court. But there is a complete absence of evidence that they would have understood that requirement to be connected in any way to the constitutional venue guarantee.

We are left, then, with constitutional wording that even defendant concedes says nothing about requiring proof of venue as a material element of the state's case, as well as contemporaneous history that fails even to hint at the possibility that the constitution was intended to have that effect. That leads to the obvious question of how this court came to hold—as defendant correctly observes that it did—that the venue guarantee of Article I, section 11, nevertheless has the effect of constitutionalizing the common-law rule of proof. To address that question, we turn to an examination of this court's case law construing Article I, section 11.

C.  *Oregon Case Law*

There are only a handful of such cases before the turn of the twentieth century. Consistently with the case law from other jurisdictions that we have described, all discuss proof of venue solely in reference to the common-law rule and without mentioning Article I, section 11.

In *State v. Johnson*, 2 Or 115 (1864), the defendant stole a horse in the Washington territory and rode it into Wasco County, Oregon, where he was apprehended and charged with larceny. At trial in Wasco County, he asked the court to instruct the jury that, if it believed that he had stolen the horse in the Washington territory, it could not find him guilty of larceny, because venue was an element of the offense. The trial court declined to so instruct the jury, and the defendant was convicted. On appeal, he argued that the trial court had erred in failing to deliver his requested venue instruction. This court affirmed on the ground that, at common law, the offense of larceny "continues and accompanies the thing stolen, from one State to another, as it does from one county to another in the same State." *Id.* at 116. The court assumed the applicability of the common-law rule that venue must be proved, but ultimately held that the rule had been satisfied by proof that the larceny had continued

into Wasco County, where the trial occurred. There was no mention of Article I, section 11.

To similar effect is *State v. Barnett*, 15 Or 77, 14 P 737 (1887). There, the defendant came into possession of stolen funds in Umatilla County and then sent the money to a bank in Multnomah County. When authorities discovered that the money was not the defendant's, he was charged with larceny and convicted of that offense in Multnomah County. The defendant argued on appeal that the court sitting in Multnomah County "was without jurisdiction to try the defendant," because the larceny took place outside of Multnomah County. This court again cited the common-law rule that larceny follows the stolen property. *Id.* at 79. As in *Johnson*, the court in *Barnett* assumed the applicability of the common-law rule requiring proof of venue as necessary to establishing the trial court's jurisdiction without mentioning Article I, section 11. *See also State v. Chew Muck You*, 20 Or 215, 216-21, 25 P 355 (1890) (state satisfied common-law rule requiring proof of venue in larceny case).

In *State v. Branton*, 33 Or 533, 56 P 267 (1899), the defendant was charged with murder and convicted of the offense. On appeal he challenged, among other things, the adequacy of proof as to venue. The legislature recently had altered the county lines close to where the killing had occurred, and there was some dispute as to which county was the site of the murder. The court resolved the question on the evidence based on the common-law rule, ultimately concluding that the facts were sufficient to establish that "the court had jurisdiction." *Id.* at 545. The court's opinion elsewhere did mention Article I, section 11, but only in reference to the defendant's separate contention that he had been deprived of his constitutional right to demand the nature and cause of the action against him. *Id.* at 540-41. There was no reference to Article I, section 11, in connection with the disposition of the defendant's arguments about venue.

The first mention of Article I, section 11, as a source of the requirement that the state prove venue as a material allegation occurred in the 1923 decision in *State v. Casey*, 108 Or 386, 213 P 771 (1923). In that case, the defendant was charged with and convicted of murder in Multnomah

County. On appeal, he argued, among other things, that the state had failed to establish venue. The court's discussion of that issue, in its entirety, was as follows:

> "'In all criminal prosecutions, the accused shall have the right to public trial \*\* [\*] in the county in which the offense shall have been committed.' Section 11, Article I, Const.

> "The place where the crime was committed is a material and jurisdictional allegation contained in the indictment, which the plea of not guilty made by the defendant puts at issue and requires that the prosecution prove, beyond a reasonable doubt."

*Id.* at 402-03. Thus, the court's analysis consisted of a quotation from Article I, section 11, followed by a single sentence summarizing what otherwise would appear to be the common-law rule requiring proof of venue to establish jurisdiction. There was no explanation or analysis. But the juxtaposition of the quotation, followed by the statement of the rule, appeared to suggest that the court—for the first time—saw a connection between the two.

That, at any rate, is how subsequent cases interpreted *Casey*. In *State v. Harvey*, 117 Or 466, 242 P 440 (1926), the defendant challenged venue on appeal. The court rejected the argument, explaining:

> "'The accused shall have the right to public trial by an impartial jury [\*\*\*] in the county in which the offense shall have been committed.' Or. Const., [A]rt. I, § 11.

> "*Therefore*, the venue of the offense is a material allegation of the complaint and must be proved to the satisfaction of the jury beyond a reasonable doubt."

*Id.* at 471 (emphasis added). The court then reviewed the evidence and found it sufficient to satisfy the state's burden. *Id.* Thus, in *Harvey*, the court for the first time explicitly linked the constitutional venue guarantee of Article I, section 11, with the common-law rule requiring proof of venue as a material allegation. But, as in *Casey*, the court provided no explanation for that linkage. It simply quoted the constitution and stated the common-law rule.

After that, the court continued to quote Article I, section 11, and recite what had earlier been understood to be

a common-law rule requiring proof of venue, usually fol-
lowed by a citation to prior cases doing the same thing.
In *State v. Miller*, 133 Or 256, 259, 289 P 1063 (1930), for
example, the court noted the defendant's argument that the
state had failed to prove venue, cited *Casey* and *Harvey*, and
simply stated that "[t]he burden of proving the venue as
laid, and beyond a reasonable doubt, is upon the state."[6] In
none of its later venue decisions did the court explain how
the wording of the venue guarantee of Article I, section 11,
had been transformed into a requirement of substantive and
jurisdictional proof.

Moreover, this court's cases have not been entirely
consistent on the point. In *State v. Lehman*, 130 Or 132, 279
P 283 (1929), for example, the issue was the constitutional-
ity of a "buffer" statute, by which the legislature provided
that, when a crime has been committed within one mile of
a county line, trial may occur in either county. In that case,
the defendant had been charged and tried in Clackamas
County for selling intoxicating liquor. The evidence at trial
showed that the offense actually had been committed in
Washington County, approximately 1,000 feet from the
Clackamas County boundary. The defendant argued that
the matter should have been dismissed for want of proof of
venue. This court disagreed. The court concluded that the
statute providing for trial somewhere other than where the
offense was actually committed was "not an unreasonable
exercise of legislative discretion." *Id.* at 138. The court but-
tressed its conclusion with a quotation from a Wisconsin
Supreme Court decision concerning the intended meaning
of that state's constitutional venue guarantee, which this
court noted was identical to this state's guarantee:

> "'The object of this provision is to protect the defendant
> against a spirit of oppression and tyranny on the part of our
> rulers, and against a spirit of violence and vindictiveness on
> the part of the people; and also to secure the party accused

---

[6] *See also State v. Evans*, 143 Or 603, 612-13, 22 P2d 496 (1933) (stating rule
without citing authority); *State v. Jones*, 240 Or 129, 130-35, 400 P2d 524 (1965)
(citing *Casey*, *Harvey*, *Miller*, and *Evans*); *State v.Cooksey*, 242 Or 250, 251-52, 409
P2d 335 (1965) (citing *Jones*); *State v. Hutcheson*, 251 Or 589, 591-92, 447 P2d 92
(1968) (citing *Cooksey* and *Jones*); *State v. Roper*, 286 Or 621, 623-30, 595 P2d 1247
(1979); *State v. Cervantes*, 319 Or 121, 873 P2d 316 (1994) (citing *Cooksey* and
*Jones*).

> from being dragged to a trial at a distant part of the State, away from his friends and witnesses and neighborhood, and thus to be subject to the verdict of mere strangers, who may feel no common sympathy, or who may even cherish animosities or prejudices against him, as well as the necessity of incurring the most oppressive expenses, or perhaps, even to the inability of procuring the proper witnesses to establish his innocence.'"

*Id.* at 136 (quoting *State v. Robinson*, 14 Minn 447, 450 (1869)).

*Lehman* is anomalous for at least two reasons. First, if the constitutional venue guarantee embodied the common-law rule requiring proof that the trial occurred where the offense took place, it would seem that the result should have been different. The undisputed evidence in *Lehman* was that the offense occurred in Washington County, while the trial occurred in Clackamas County. Second, the court dismissed the defendant's objections about venue by invoking the justification for the federal constitutional venue and vicinage guarantees, not the common-law rule. *See also State v. Roper*, 286 Or 621, 628-29, 595 P2d 1247 (1979) (tracing origins of constitutional venue guarantee not to common law, but to the Virginia Resolves and concerns about British deportation of colonists for trial in England).

D.   *Stare Decisis*

To summarize, our analysis under *Priest* establishes that the wording of the venue guarantee of Article I, section 11, by its terms, expresses a defendant's right to a criminal trial in a particular place. It says nothing about limitations on the jurisdiction of circuit courts or about substantive proof of criminal offenses or, for that matter, proof of anything at trial. The context of the venue guarantee—the other clauses of Article I, section 11—lists other rights of a criminal defendant, none of which has ever been interpreted to require particular proof at trial.

The historical circumstances fail to show that the framers of the Oregon Constitution would have understood the venue guarantee of Article I, section 11, to mean something different from what we have noted that its wording suggests. The historical record shows only that the framers would have understood that, while the common law may

have required proof of venue in order to establish the jurisdiction of the trial court, the constitution guaranteed a right not to be dragged away to a distant place of trial—a right that would be subject to waiver if not asserted.

This court's past case law nevertheless has concluded that proof of venue as a material allegation is required by Article I, section 11. Those cases, however, reached that conclusion without analysis. Since 1923, the court has simply stated the conclusion. Certainly, in no case has this court examined the issue in accordance with the interpretive analysis that *Priest* requires.

In *Stranahan v. Fred Meyer, Inc.*, 331 Or 38, 53, 11 P3d 228 (2000), this court explained that the question whether to overrule a prior constitutional decision entails balancing two competing considerations: stability in the law and "the need to be able to correct past errors." Sometimes, the court said, the need to correct past errors can outweigh the importance of stability. *Id.* "This court," it explained, "is the body with the ultimate responsibility for construing our constitution, and, if we err, no other reviewing body can remedy that error." *Id.*

Although this court does not lightly overrule an earlier constitutional decision, *see Farmers Ins. Co. v. Mowry*, 350 Or 686, 693-94, 261 P3d 1 (2011) (reviewing considerations that warrant overruling prior constitutional case law), it has determined that the need to correct past errors may outweigh the importance of stability when the application of the court's interpretive analysis in *Priest* demonstrates that the earlier case or cases find little or no support in the text or history of a disputed constitutional provision. *Stranahan* itself illustrates the point. At issue in that case was whether the court would adhere to a prior decision, *Lloyd Corporation v. Whiffen*, 315 Or 500, 849 P2d 446 (1993) (*Whiffen II*), which read Article IV, section 1, of the Oregon Constitution, to create a right to collect initiative petition signatures on private property. The court in *Stranahan* noted that *Whiffen II* had been decided without engaging in the analysis required by *Priest* and then proceeded to engage in that analysis. *Stranahan*, 331 Or at 55. The court ultimately concluded that,

> "after considering the text, the relevant case law, and the history of the initiative and referendum provisions of Article VI, section I, we have found nothing to support the conclusion set out in *Whiffen II*, *viz*., that persons soliciting signatures for initiative petitions may do so on certain private property over the owner's objection. We therefore hold that Article IV, section 1, does not extend so far as to confer that right. The contrary holding of *Whiffen II* was error, and it is disavowed."

*Id.* at 65-66.[7]

In this case, we confront a similar line of cases, which adopted an interpretation of Article I, section 11, that even defendant acknowledges finds no support in the wording of the constitution. As we have noted, the prior case law also finds no support in the historical circumstances of the adoption of the constitutional venue guarantee. Under the circumstances, we conclude that it is appropriate to overrule *Casey*, *Harvey*, and subsequent decisions holding that the venue guarantee of Article I, section 11, requires the state to prove venue beyond a reasonable doubt as a material allegation of every criminal case.[8]

Accordingly, we hold that Article I, section 11, enumerates a defendant's right to a trial in a particular place: "the county in which the offense shall have been committed." It does not codify the common-law rule requiring the state to prove venue as a material allegation. The old common-law rule was one of jurisdiction. The constitutional guarantee is a matter of personal right, which—like other constitutional rights—may be forfeited if not timely asserted. *Cf. State v. Steen*, 346 Or 143, 151, 206 P3d 614 (2009) (a defendant may

---

[7] *See also Savastano*, 354 Or at 95-96 (overruling prior constitutional decision because "application of the court's methodology in *Priest* for interpreting constitutional provisions persuades us that [the prior case] \*\*\* finds little support in the text or history" of the constitution); *State v. Christian*, 354 Or 22, 38-40, 307 P3d 429 (2013) (overruling prior constitutional case law that was not supported by analysis or explanation); *Yancy v. Shatzer*, 337 Or 345, 362, 97 P3d 1161 (2004) (overruling prior case that recognized exception to mootness doctrine "without undertaking any effort to determine whether such an exception was compatible with the scope of the judicial power granted under the Oregon Constitution").

[8] Defendant does not argue that, independently of Article I, section 11, there is a common law proof of venue requirement that survives the adoption of statutes pertaining to jurisdiction and venue in criminal cases. *See, e.g.*, ORS 131.305 to 131.415.

be precluded from asserting certain constitutional rights not timely asserted).

There remains the question of when the right must be asserted to avoid waiver. Courts in other jurisdictions that do not treat venue as a material allegation that must be proved at trial require a defendant to put venue at issue before trial by an appropriate motion; if an issue of fact is raised by such a motion, it is resolved at a pretrial evidentiary hearing by the court, with the prosecution bearing the burden of proof. *See generally* LaFave, 4 *Criminal Procedure* § 16.1(f) (citing cases).[9] The Washington Supreme Court, for example, has concluded that its state's constitutional venue guarantee generally requires a defendant to raise the issue of venue before trial begins—that is, before the jury is empaneled, in the case of a jury trial, and before the court begins to hear evidence, in a trial to the court. *State v. Dent*, 123 Wash 2d 467, 479, 869 P2d 392 (1994).[10]

---

[9] There is also an issue of the standard of proof, that is, whether the state must establish venue by a preponderance of the evidence or beyond a reasonable doubt. Other state courts addressing the issue have split. Some courts hold that the state must establish venue beyond a reasonable doubt. *See, e.g.*, *Bulloch v. State*, 293 Ga 179, 187, 744 SE2d 763 (2013) ("Venue is a jurisdictional element of every crime and the state has the burden of proving venue beyond a reasonable doubt."); *Peterson v. Houston*, 284 Neb 861, 869, 824 NW2d 26 (2012) ("we have held that the State must prove proper venue beyond a reasonable doubt"); *People v. Jones*, 219 Ill 2d 1, 33, 845 NE2d 598 (2006) ("[V]enue was a material element of the offense and the state was required to prove the element beyond a reasonable doubt."). Others hold that venue may be established by a preponderance of the evidence. *State v. Roybal*, 139 NM 341, 349, 132 P3d 598 (2006) ("[B]ecause venue is not an element of the crime charged, it may be established by a mere preponderance."); *State v. Parker*, 116 So 3d 744, 749 (La 2013) ("Objections to venue must be raised by a motion to quash to be ruled on by the court in advance of the trial. At the hearing, the burden is on the State to prove venue by a preponderance of the evidence."); *Fulmer v. State*, 401 SW3d 305, 317 (Tex App 2013) ("The State bears the burden of proving venue by a preponderance of the evidence."). Most of the state courts concluding that the higher burden of proof applies, however, also hold that venue is a material allegation or element; conversely, most of those holding that the lesser standard applies conclude that venue is not a material allegation or element. In light of our disposition, we need not resolve that question in this case.

[10] *See also Derry v. Commonwealth*, 274 SW3d 439, 442 (Ky 2008) (since venue is not "jurisdictional," it is "waived" by failing to raise the issue before trial); *State v. Wood*, 596 SW2d 394, 399 (Mo 1980) ("Having proceeded to trial without objection, appellant waived the issue [of venue]."); *State v. Allen*, 293 NW2d 16, 18 (Iowa 1980) ("considering first the time for ruling upon a defendant's venue objection, we conclude that the defendant must secure a ruling by the trial court before trial after the parties have had an opportunity for an evidentiary hearing or he waives the issue of improper venue"); *Smith v. State*, 116 Md App 43, 53, 695 A2d 575 (1997) (improper venue "must be raised by motion before trial").

That seems to us an appropriate requirement. First, given that the purpose of the right is to protect a defendant from the hardship and potential unfairness of being required to stand trial in a distant place, it makes sense that the matter of venue should be resolved as soon as possible before the trial itself. Second, requiring a timely pretrial objection precludes a defendant from waiting until the trial has begun to raise the issue of venue, thus creating the need to start the trial over again or, worse, spawning potential double-jeopardy problems.[11]

We turn, then, to the disposition of this case. Consistently with our holding, the state was not required by Article I, section 11, to prove that the traffic stop occurred in Washington County, given that defendant did not raise the issue of venue until trial already had commenced. Under the circumstances, however, we conclude that it would be unfair to defendant to hold that he forfeited the opportunity to challenge venue, in light of the fact that the law in effect at the time of trial permitted him to wait until the state rested to raise the issue.

Accordingly, we reverse the decision of the Court of Appeals and reverse the trial court judgment of the circuit court and remand for further proceedings. If, on remand, defendant elects not to challenge venue under Article I, section 11, the trial court judgment must be reinstated. If defendant challenges venue under Article I, section 11, the trial court may hold an evidentiary hearing at which the state will have the opportunity to establish—and defendant

---

Referring to other state cases on matters of criminal trial procedure is not always helpful, because they are often controlled not by constitutional guarantees but by statutes and rules of criminal procedure. In that regard, we note that Oregon statutes likewise prescribe requirements for challenging venue in criminal cases. *See generally* ORS 131.305 to 131.415. In this case, defendant's venue challenge is predicated solely on Article I, section 11. We therefore express no opinion about the constitutionality, interpretation, or applicability of those statutes.

[11] Under traditional analysis of the federal double-jeopardy guarantee, most courts conclude that dismissal for want of venue does not constitute an acquittal and therefore does not bar a retrial. *See, e.g.*, *Burks v. United States*, 437 US 1, 98 S Ct 2141, 57 L Ed 2d 1 (1978). But some state courts have concluded that constitutional double-jeopardy guarantees do preclude a retrial following dismissal for improper venue. *See, e.g.*, *Williams v. State*, 634 NE2d 849 (Ind App 1994) (dismissal for improper venue "brought an end to the jeopardy which had attached when the first witness was sworn").

will have the opportunity to contest—that Washington County is the appropriate venue. If the court concludes that the state has met its burden of establishing venue, the judgment of the circuit court must be reinstated.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.