Submitted October 28, 2014, vacated and remanded June 3, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOSHUA JOHN WILLIAMS,
*Defendant-Appellant.*

Multnomah County Circuit Court
120950864; A153175

351 P3d 791

Peter Gartlan, Chief Defender, and Elizabeth Daily, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Michael S. Shin, Senior Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

DEVORE, J.

**DEVORE, J.**

In this criminal case, defendant appeals a judgment of conviction for misdemeanor driving while suspended, ORS 811.182. He assigns error to the denial of his motion to suppress and the denial of his motion for judgment of acquittal on the question of venue. Defendant argues that the evidence of his suspended license was discovered only after he was unlawfully stopped. Because we conclude that the trial court explicitly failed to resolve disputed facts that are essential to determining whether the court erred by denying defendant's suppression motion, we vacate and remand. As to venue, the state concedes error to the extent that it urges that we remand to allow defendant to contest venue consistent with *State v. Mills*, 354 Or 350, 312 P3d 515 (2013). To that extent, we agree.

In reviewing a trial court's denial of a motion to suppress, we are bound by the trial court's findings of historical fact if supported by evidence in the record. *State v. Hall*, 339 Or 7, 10, 115 P3d 908 (2005). In the absence of express findings, we ordinarily presume that the trial court resolved factual disputes consistently with its ultimate decision. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). In this case, however, the trial court explicity did not resolve disputed facts of defendant's interaction with the police. Instead, it assumed defendant's version *arguendo* and decided that no stop occurred and thus, that there was no constitutional violation.

On September 3, 2012, Portland Police Officers Macho and Kerwin were patrolling the east precinct of Multnomah County in uniform and driving an unmarked police vehicle. They passed defendant, who was driving the opposite direction, and turned around to follow him because he looked nervous. Macho testified that he observed defendant commit a traffic violation when his car briefly left its lane of travel and entered the oncoming-traffic lane. Kerwin did not see the violation. Defendant turned into a gas station, parked next to the gas pump, and got out of his vehicle, heading toward the station's building entrance. The officers pulled in behind defendant, but did not block defendant's vehicle or activate their lights.

The officers' testimony regarding the encounter differed from defendant's testimony in significant ways. Kerwin testified that she approached defendant and said, "Hey, can I talk to you for a second?" Defendant replied, "Sure, what's up?" and walked back toward her. Macho testified that they "chatted" with defendant for awhile, and he told defendant "he was not legally stopped, that we just needed to—we just wanted to talk to him" and defendant responded that he understood. Both officers testified that they did not mention the traffic violation, tell defendant he was not free to leave, or state that they were investigating criminal activity. Eventually, the officers asked defendant for his identification, which he did not have. Instead, he provided his name and date of birth. While Macho continued speaking with defendant, Kerwin checked his information on the police database and discovered that defendant's driver's license was "misdemeanor suspended." The officers placed defendant under arrest. In his report, Macho did not mention the traffic violation that he had observed. However, he testified that, if defendant had not consented to speak with them, he would have stopped him for the traffic violation.

Defendant testified that he had noticed the officers following him prior to turning into the gas station. Defendant recalled that, after he got out of his car and started walking toward the gas station building, Kerwin said, "Hey, you, stop."[1] Defendant replied, "Did I do something wrong?" and Kerwin responded, "Yes, you can't turn like that." Defendant testified that he waited because he believed he was being investigated. Kerwin then asked defendant for his license and insurance. Defendant testified that the officers never actually told him that they had stopped him for a traffic violation or that they were going to write him a ticket, but also that they never told him he was free to go. When asked if he was aware that Kerwin was verifying his identification, defendant testified, "Yeah, because they said they were just going to let me go, and that's when they ran my name, and she said they have to place me under arrest." Defendant was arrested for misdemeanor driving while suspended or revoked.

---

[1] In later testimony, defendant repeated only that Kerwin said, "Hey, you."

Before trial, defendant moved to suppress the evidence of his identification, arguing that his encounter with the officers constituted an unlawful seizure under Article I, section 9, of the Oregon Constitution. Defendant argued that a reasonable person would not have felt free to leave under the totality of the circumstances, because the officers had followed him into the gas station, pulled in behind him, told him to stop, and informed him that he had committed a traffic violation. Defendant also argued that Macho's statement to defendant that he was "not legally stopped," would not convey to defendant, under the circumstances, that he was free to leave. The trial court denied the motion. In ruling, the court appears to have concluded that, even under defendant's version of the encounter, defendant was not stopped for Article I, section 9 purposes. The court explained,

"[I] find that under the totality of the circumstances, a reasonable person would [have felt] free to go, and that the officers' conduct in this case was as described, even as described by [defendant], is one that did not create a stop."

The trial court did not expressly reconcile the differing accounts or make any credibility findings regarding the officers' or defendant's testimony. Given the court's reference to defendant's account, we understand, contrary to our usual practice, that the court did not resolve or consider it necessary to reach the points of disagreement in witness accounts.

Following the ruling, the parties stipulated to adopt the testimony from the suppression motion for the purposes of trial. Defendant then moved for a judgment of acquittal on the ground that the state had failed to prove venue. The trial court denied the motion and found defendant guilty of driving while suspended.

On appeal, defendant argues that the trial court erred in ruling that he was not seized under his version of events. In defendant's view, the order from Kerwin to "stop," her statement that he "can't turn like that," and her subsequent request for defendant's license and insurance were sufficient to create an impression in the mind of a reasonable person that defendant was not free to go about his normal affairs.

The state responds that, even under defendant's version of the encounter, he was not seized. The state notes that defendant's testimony was inconsistent regarding what Kerwin initially said to him—whether it was "Hey, you" or "Hey, you, stop"—and contends that Kerwin's request for identification did not transform the encounter into a stop. The state asserts that Kerwin's statement that defendant had committed an improper turn did not establish a stop because defendant testified that the officers told him they were going to let him go. Finally, as an alternative basis for affirmance, the state argues that if defendant was stopped, then the stop was supported by probable cause to investigate the center-line violation Macho observed.

For the reasons described below, we conclude that, under defendant's version of the encounter, the officers' encounter with defendant was a stop. Because defendant's version of the encounter could provide a basis for suppressing the evidence if probable cause were lacking at that time, factual findings on this issue remain unresolved, and we must remand to the trial court for a determination in the first instance.

Article I, section 9, of the Oregon Constitution guarantees individuals the right to be "secure in their persons *** against unreasonable search, or seizure." At issue here is whether the encounter between defendant and the officers preceding his arrest was "mere conversation"—a noncoercive encounter that is not a seizure and requires no justification under Article I, section 9—or was in fact a "stop"—a temporary restraint on a person's liberty that, unless justified, violates Article I, section 9. *State v. Ashbaugh,* 349 Or 297, 308-09, 244 P3d 360 (2010). Not all encounters between police and public are seizures. To reach a constitutionally significant dimension, the officer must add to the inherent pressures of a citizen-police encounter "by either physically restraining the citizen's liberty in a significant way or engaging in a 'show of authority' that, explicitly or implicitly, reasonably conveys to the person a significant restriction on the person's freedom to terminate the encounter or otherwise go about his or her ordinary affairs." *State v. Anderson,* 354 Or 440, 450, 313 P3d 1113 (2013) (citing *State v. Backstrand,*

354 Or 392, 402, 313 P3d 1084 (2013)). A person is seized under Article I, section 9, if an officer explicitly or implicitly conveys to the person, "either by word, action, or both, that the person is not free to terminate the encounter or otherwise go about his or her ordinary affairs." *Backstrand*, 354 Or 392. Whether an officer's conduct amounts to a stop is a fact-specific question, resolution of which requires an examination of the totality of the circumstances. *Id.* at 399. "If, considered in light of the totality of the circumstances, the officer's conduct gives rise to a 'reasonable perception that [the] officer is exercising his or her authority to restrain,' then the officer's conduct constitutes a stop." *State v. Jackson*, 268 Or App 139, 145, 342 P3d 119 (2014) (quoting *Backstrand*, 354 Or at 401) (brackets in *Jackson*).

We have previously held that an officer stops a person when the officer communicates to them that they are "conducting an investigation that could result in the person's citation or arrest at that time or place." *State v. Morfin-Estrada*, 251 Or App 158, 164, 283 P3d 378, *rev den*, 352 Or 565 (2012); *see also State v. Zaccone*, 245 Or App 560, 567, 261 P3d 1287 (2011), *rev den*, 355 Or 381 (2014) (where the sequence of events allowed an inference that the "defendant was the subject of a continuing investigation," a reasonable person "would believe that his or her freedom of movement had been significantly restricted by [the officer's] show of authority"). In *Morfin-Estrada*, an officer on patrol observed the defendant and another man cross a street against the traffic light, a traffic violation. 251 Or App at 160. After a brief exchange, the officer told the men that he had seen them cross the street against the traffic light, and, soon thereafter, the defendant consented to a patdown search for weapons, which revealed a dagger. On appeal of the denial of his motion to suppress the evidence of the dagger, we explained that a stop occurs when an officer tells a person that the person has committed a violation or crime. *Id.* at 165. We emphasized our reasoning from a similar case, noting "[T]he officer began the encounter by telling [the defendant] that he had just seen him break the law. An ordinary citizen, faced with such a statement by a uniformed police officer, would not believe that he or she was free to leave." *Id.* (quoting *State v. Terhear/Goemmel*, 142 Or App 450, 459, 923 P2d 641 (1996)).

We considered a similar circumstance in *Jackson*, where an officer approached the defendant in a gas station and explained that he wanted to talk to the defendant about his failure to use a turn signal earlier at an intersection. 268 Or App at 140-41. Eventually, the officer obtained consent to search the defendant's car, and the search revealed evidence of a crime. The defendant moved to suppress the evidence, arguing that he had been unconstitutionally seized when the officer told him that he had committed a traffic violation. The trial court denied the motion. We reversed the trial court and ordered the evidence suppressed. We explained, "[T]he assertion that [the officer] had seen defendant commit a traffic violation stopped defendant. A reasonable person in defendant's position would believe that he was not free to leave until [the officer] gave him a citation or an indication that he was free to go." *Id.* at 147.

The same is true in this case. Defendant testified that Kerwin called out to him while he was walking away from his car, informed defendant that he had made an improper turn, and asked for his driver's license and insurance. We reject the state's assertion that the officer was merely suggesting that defendant had done something improper or unwise that did not rise to the level of asserting a violation. Given the circumstances, which include following defendant into the station, pulling in behind him, and intercepting him on his way into the gas station building, the subsequent statement that defendant had turned improperly, followed by the request for identification and insurance, would be understood by a reasonable person in defendant's position to mean that he was being investigated for a traffic violation and "was not free to leave until [the officer] either gave him a citation or indicated that he was free to go." *Morfin-Estrada*, 251 Or App at 166.

We reject the state's argument that the characterization of a stop was avoided by defendant's remark that "they said they were just going to let me go, and that's when they ran my name[.]" First, it is unclear when the officer's statement occurred. *See Jackson*, 268 Or App at 147 (in finding that the defendant was stopped, noting that the officer did not inform defendant that he had decided not to cite

him for a traffic violation or tell him that he was free to go). Second, a statement from officers that they were *going to* let defendant go is materially different than telling someone they *are* free to go. The former indicates that he may soon be free to go, in the future, contingent on some action by the officer (*i.e.*, a clean warrant check of defendant's identification), while the latter reflects a present freedom to leave. Accordingly, under defendant's version of events, his remark would not transform the stop into mere conversation.

We reject as premature the state's alternative argument that we can affirm the trial court even if defendant was stopped, because the stop was supported by probable cause to investigate the traffic violation Macho observed. The state contends that we may affirm on the "right for the wrong reasons" rationale explained in *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001). We disagree. To affirm on an alternative basis, we must find that (1) the facts in the record are sufficient to support the alternative basis for affirmance, (2) the trial court's ruling was consistent with the view of the evidence under the alternative basis for affirmance, and (3) the record must be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below. *Id.* In this case, the second predicate is not satisfied because the trial court, having concluded that no stop occurred under either parties' version of events, never reached the issue of probable cause. Therefore, the trial court did not rule on the suppression motion on that ground, and did not make any findings regarding potential inconsistencies between Macho's testimony that defendant crossed the center line and Kerwin's statement that defendant had actually turned improperly. For that reason, we decline to affirm the trial court on those alternate grounds, and the trial court, if necessary, can address probable cause on remand.

We conclude that, because, under defendant's version of events, he was stopped, the trial court must resolve the differing testimony regarding the encounter as the initial finder of fact. If the trial court finds as fact that the encounter occurred as defendant testified, then the court should determine whether the officers had probable cause

to make that stop at that time. If the trial court finds that the officers' account is what occurred, then the motion to suppress should be denied and the court should reinstate defendant's conviction. Finally, consistent with the Supreme Court's decision in *Mills*, the trial court should permit defendant the opportunity to challenge venue on remand.

Vacated and remanded.