[Filed April 18, 1887.]

## STATE OF OREGON, RESPONDENT, *v.* E. T. BARNETT, APPELLANT.

LARCENY.—A person committing larceny in a foreign country, and converting the stolen property to his own use in this State, either personally or by innocent agents is guilty of larceny in this State.

APPEAL from Multnomah County.    Affirmed.

The facts are stated in the opinion.

*Gearin & Gilbert,* for Appellant.

1. The indictment does not state facts sufficient to constitute a crime.
2. The testimony shows no bailment. (Bishop on Statutory Crimes, § 423.)
3. The court had no jurisdiction to try the case.
4. The property, if stolen, was stolen without the State.
5. It is presumed the common law is in force in British Columbia.
6. Bank-notes not larceny at common law. (Wharton's Com. Law, § 1758.)
7. There is no larceny by bailee at common law.

*Henry E. McGinn,* and *N. D. Simon,* for Respondent.

1. The offense of larceny accompanies the stolen property. (*State* v. *Johnson,* 2 Or. 15; 1 Bishop on Criminal Law, §§ 136–144, inclusive.)

2. The offense is a statutory offense. (Crim. Code, § 16; *People* v. *Gardner*, 2 Johns. 477; *People* v. *Burke*, 11 Wend. 129.)

3. This rule applies as well to statutory larcenies as to common-law larcenies. (Bishop on Statutory Crimes, § 140; *Commonw.* v. *Simpson*, 9 Met. 138; *Commonw.* v. *Rand*, 7 Met. 475.)

4. Personal presence is not essential. (Wharton's Criminal Law [8th ed.], § 279; *People* v. *Adams*, 3 Denio, 190; *Commonw.* v. *White*, 123 Mass. 430; 1 Bishop's Criminal Procedure, §§ 53–60; 1 Bishop on Criminal Law, §§ 110, 111.)

Lord, C. J.—The defendant was indicted, tried, and convicted of the crime of larceny by bailee. On the trial of the cause, it appeared in evidence that the money alleged to have been converted by the defendant to his own use was delivered to him by a witness of the name of De Wolf, for safe-keeping, and to facilitate its transportation somewhere in British Columbia. That the money was brought by the defendant in person into Pendleton, Umatilla County, Oregon, and there placed by him with the Wells-Fargo Express Company for shipment to the bank of British Columbia, in the city of Portland, Multnomah County, Oregon, and at the same time he addressed the following letter to the bank:—

"Pendleton, Oct. 17, 1886.

" *Bank of British Columbia, Portland, Oregon.*

" *Dear Sir:* I have sent you two thousand dollars, Canadian money, by Wells, Fargo & Company's Express, to exchange for U. S. money. Please send draft on your bank to First National Bank, Pendleton, Oregon, to me.

(Signed,)          "E. T. Barnett."

The money and letter sent as above stated were received by the bank at the city of Portland, and in accordance with the directions or instruction of the defendant, the Canadian money was converted into U. S. money, placed in a draft and sent to the defendant at Pendleton, Umatilla County, Oregon; that he received the draft and absconded with it to Dayton, W. T. It

was also-shown in evidence, that before he had shipped the money by Wells, Fargo & Co., he represented to the witness, De Wolf, that the money had been stolen out of the saddle-bags where he had placed it, and the defendant represented constantly that the money had been stolen by the Indians. It is thus seen that the defendant came into Oregon with the property placed in his custody, denying his possession, and asserting that the Indians had stolen it, and sent it by his innocent agent into the county in which he was afterwards indicted, and by his direction had the money converted into U. S. money, and a draft made payable to him for the purpose of appropriating it to his own use, and facilitating his escape with it. Upon this state of facts, the counsel for the defendant claims that the court was without jurisdiction to try the defendant, and as a consequence, that the judgment of conviction pronounced against him is void. Virtually, this is based on two propositions: (1) That the bringing into this State by the defendant money stolen in British Columbia does not constitute an offense against the laws of this State; and (2) that not having been personally present in Multnomah County with the stolen money in his possession, the defendant could not lawfully be subjected to a trial there. The first objection raises the vexed question upon which there has been, and now is, much diversity of judicial opinion. For a collection of the authorities, and the holdings *pro* and *con* of the different States by their courts of last resort, see Bishop on Criminal Law, § 141. It was, however, at an early day held in this State, that the offense of larceny committed without the State continues and accompanies the stolen property, and that the offense may be tried in any county within the State into which such stolen property may be brought by the offender. And since this decision, it has been provided by law that: "When property feloniously taken . . . . without the State, by burglary, robbery, larceny, or embezzlement, is brought within it, the action may be commenced and tried in any county therein into which such property may be brought." (Crim. Code, § 16.) The argument that a completed offense was committed before the defendant came into the State, and that his subsequent acts here could not make another,

for which he would be liable within the jurisdiction of this State, is effectually disposed of by the statute declaring that when property so taken without the State is brought within it, the action may be commenced and tried within any county therein into which such property may be brought. The offender who has obtained a felonious possession without the State cannot bring the pr~perty stolen or embezzled within the State, with the intent to appropriate or convert it to his own use, without violating the laws of this jurisdiction and rendering him liable to its punishments. "Always," says Mr. Bishop, "when a man has with him property in the State where any legal inquiry concerning it arises, the courts look into the legal relation he sustains to it there. If he stole it in another State, he has not even the right to its custody in the new locality; and the rule in larceny is, that when a man, having in his mind the intent to steal, makes any removal or carrying of goods, to the custody of which he has no title, he commits the crime." (Bishop on Criminal Law, § 138.) "Our courts, indeed, have no occasion, neither have they jurisdiction, to try prisoners for larcenies committed abroad, against the law of foreign governments. But they can inflict punishment for offenses against our laws, and if a man has property in his hands here, they can inquire what legal relation he sustains here to this property; and if it came with him from a foreign country, the relation he sustained to it there establishes his relation to it here." (Bishop on Criminal Law, § 139.) "The proposition that a man is to escape punishment for the violation of our laws, because he first violated the laws of a foreign country, is absurd in itself, and mischievous in its practical application. Nothing is plainer than that when a man is found here with property, our courts will inquire after the owner of it, equally whether said owner is a foreigner or a citizen, present, personally, or absent. Nothing is plainer than that our courts will protect the rights of property, equally whether the property is in the owner's grasp, or wrongfully found in the grasp of a felon." (Bishop on Criminal Law, § 140.) What was the legal relation which the defendant sustained to this property which he brought within the jurisdiction of this State? Upon the

admitted facts, for the purposes of this case, the property was intrusted to his custody as a bailee. Before he reached this State, he declared to the owner of it, what in fact was false, that the Indians had stolen it, when the identical property was then in his possession, and had not been out of it. He brought that property or money into this State, still denying his possession and asserting that falsehood, and with intent to convert and appropriate it to his own use, placed it in the hands of Wells, Fargo & Co., with directions to deliver it to the bank of British Columbia, and instructed the bank by letter to exchange or discount the Canadain money for U. S. money, and for the same "to send draft on your bank to the First National Bank, Pendleton, Oregon, to me," the defendant; all of which was done and performed, and the draft received according to his direction and authority. Under this state of facts, can it be maintained that our laws have not been violated and a crime committed within their jurisdiction? It is conceded that it was the property of De Wolf, and that he was entitled to its possession, and that the defendant meant and intended to deprive him of its ownership, and to feloniously convert it to his own use. If these circumstances do not constitute the offense with which the defendant is charged, "then it is impossible for any man, under any circumstances, to do acts completely falling within the description and definition given in the books of this offense." (Bishop on Criminal Laws, § 140.) But it is said that the court had no jurisdiction to try him because he did not bring the money or property within that county. It is true the defendant did not bring the property personally within the county in which he was indicted, tried, and convicted. But the property was brought within the county by his innocent agent, under his direction and authority, and for the purpose of facilitating and completing its conversion, and putting his crime beyond the reach of discovery. It was done by the hand of another, but that hand was directed and controlled by his mind. "He who does an act in this State by an agent," said Hosmer, C. J., "is considered as if he had done it in his own proper person." (*Barkhamsted* v. *Parsons*, 3 Conn. 1.) In judgment of the law, he who procures the act to

be done is present at its commission, and will not be permitted to deny that he personally committed it at the place where it was done. In such case the innocent agent is not an offender; but the employer, though absent, is the principal offender, and is deemed to have been personally present. In *Commonw.* v. *White*, 123 Mass. 434, the court say, by Martin, J.: "The personal presence of the thief is not always necessary to make him guilty of larceny. If he does in this State, either personally or by the hand of another, who is not principal in the larceny, all the acts which constitute the essential elements of the crime, he may be indicted and punished in this State if he can be apprehended within its jurisdiction. It is true that it has been held that when the agent is a guilty actor in the commission of the felony, he is the principal offender, and the procurer is an assessory before the fact; but when the agent is not guilty of the crime, the procurer is regarded as the principal, though absent. . . . . He intrusted them to the hands of an agent, not an accomplice in the theft, and sent them into this commonwealth to be disposed of. While they were here in the hands of his agent, he had the same control and power over them as if he held them here in his own hands. His mind directed the disposition of them; he sold them to the defendant. We think the maxim, *qui facit per alium facit per se* applies, and that he was liable criminally as well as civilly for the acts of his agent, to the same extent as if done by him in person." In *People* v. *Adams*, 3 Denio, 210, Beardsly, J., said: "The defendant may have violated the law of Ohio by what he did there, but with that we have no concern. What he did in Ohio was not, nor can be, an infraction of our law or a crime against this State. He was indicted for what was done here, and done by himself. True the defendant was not personally within the State, but he was here in purpose and design, and acted by his authorized agents. The agents employed were innocent, and he alone was guilty. An offense was thus committed, and there must have been a guilty offender; for it would be somewhat more than absurd to hold that any act could be a crime if no one was criminal. Here the crime was perpetrated within this State, and

over that our courts have undoubted jurisdiction. This necessarily gives them jurisdiction over the criminal. *Crimen trahet personam.*" Here both the principal and agent were in this State, but in different counties of it. But this does not affect the application of the rule. As said by Beardsly, J., *supra:* "That such is the rule, when both principal and agent at the time the crime is perpetrated were in the same State, although in different counties, was not denied at the argument, nor does it admit of a question." It follows that the judgment must be affirmed, and it is so ordered.