Argued and submitted September 27, 2022, reversed May 17, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ALEXANDER TYNELL WILLIAMS,
*Defendant-Appellant.*

Washington County Circuit Court
20CR10927; A175260

530 P3d 919

Defendant appeals a judgment of conviction for first-degree assault and first-degree criminal mistreatment. Before his trial, which took place in Washington County, defendant moved to dismiss the charges, contending that Washington County was not the proper venue for the trial. In the course of litigating that motion, the state presented its evidence of exactly where and when the offenses had taken place. That evidence indicated that the offenses had occurred at an unknown and undiscoverable time and place during an approximately 3.5-hour window, during which time defendant, the victim, and two other children, who were three and four years old, had traveled on public transportation between Hillsboro, Oregon, and Vancouver, Washington. The state "stipulated" orally and asserted in its briefing that it would not be able to prove whether the charged conduct and results took place in Washington County, Oregon; Multnomah County, Oregon; or Clark County, Washington. The trial court found, and several times reiterated, that the state had not proved, and would not be able to prove, in which county, or state, the offenses took place. It determined that Washington County was an appropriate venue because "the location of the crime could not be ascertained," ORS 131.325, and, the court found, Washington County was defendant's place of residence. Accordingly, the court denied defendant's motion to dismiss. On appeal, defendant contends that the court erred in denying the motion to dismiss because the state's evidence and "stipulation" established that the state would not prove that the offenses occurred in Oregon, and, consequently, the trial court, and Oregon courts as a whole, lack territorial or subject matter jurisdiction over the crime. *Held*: The Court of Appeals held that the record created on defendant's motion to dismiss, coupled with the state's stipulation that it would not prove whether the offenses occurred in Washington County, Oregon, Multnomah County, Oregon, or Clark County, Washington, demonstrates, beyond dispute, that the state cannot show that Oregon courts have subject matter jurisdiction over these offenses. Accordingly, under these unusual procedural circumstances, the trial court was required to dismiss the case because it lacked subject matter jurisdiction.

Reversed.

Andrew Erwin, Judge.

Rond Chananudech, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office

of Public Defense Services. Alex Williams filed the supplemental brief *pro se*.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and James, Judge pro tempore.

JAMES, J. pro tempore.

Reversed.

**JAMES, J., pro tempore**

Defendant appeals a judgment of conviction for first-degree assault, ORS 163.185, and first-degree criminal mistreatment, ORS 163.205, for conduct against an infant.[1] Before his trial, which took place in Washington County, defendant moved to dismiss the charges, contending that Washington County was not the proper venue for the trial. In the course of litigating that motion, the state presented its evidence of exactly where and when the offenses had taken place. That evidence indicated that the offenses had occurred at an unknown and undiscoverable time and place during an approximately 3.5-hour window, during which time defendant, the victim, and two other children, who were three and four years old, had traveled on public transportation between Hillsboro, Oregon, and Vancouver, Washington. The state "stipulated" orally and asserted in its briefing that it would not be able to prove whether the charged conduct and results took place in Washington County, Oregon; Multnomah County, Oregon; or Clark County, Washington. The trial court found, and several times reiterated, that the state had not proved, and would not be able to prove, in which county, or state, the offenses took place. It determined that Washington County was an appropriate venue because "the location of the crime could not be ascertained," ORS 131.325, and, the court found, Washington County was defendant's place of residence. Accordingly, the court denied defendant's motion to dismiss.

On appeal, defendant assigns error to, among other things, the denial of his motion to dismiss. However, he no longer challenges the court's decision as to venue. He now contends that the court erred in denying the motion to dismiss because the state's evidence and "stipulation" established that the state would not prove that the offenses occurred in Oregon, and, consequently, the trial court, and Oregon courts as a whole, lack territorial or subject matter jurisdiction over the crime. The state responds with a variety of arguments about the nature of and proper procedure for raising territorial jurisdiction.

---

[1] Defendant was also found guilty of one count of third-degree assault, which the trial court merged with the verdict on first-degree assault.

   We review questions of subject matter jurisdiction for errors of law. *Wallace v. State ex rel PERB*, 245 Or App 16, 18, 263 P3d 1020 (2011). As explained below, we agree with defendant that the record created on defendant's motion to dismiss, coupled with the state's stipulation that it would not prove whether the offenses occurred in Washington County, Oregon, Multnomah County, Oregon, or Clark County, Washington, demonstrates, beyond dispute, that the state cannot show that Oregon courts have subject matter jurisdiction over these offenses. Accordingly, under these unusual procedural circumstances, the trial court was required to dismiss the case because it lacked subject matter jurisdiction. We reverse defendant's convictions. That disposition obviates the need to address defendant's other assignments of error.

## I.  FACTS

   The relevant facts are procedural. Defendant was indicted in Washington County on seven counts, and the indictment alleged that each offense had taken place in Washington County. Before trial, defendant moved to dismiss the case, citing *State v. Mills*, 354 Or 350, 312 P3d 515 (2013), and contending that "Washington County is not a proper venue." The state initially responded that a motion to dismiss for lack of venue is improper; rather, the state contended, a defendant may move for a *change* of venue, but "must tell the court where his trial should occur." In reply, defendant disagreed, and further asserted that "to require a defendant to suggest an appropriate venue raises constitutional questions under both Article I, section 12, of the Oregon Constitution and [the Fifth Amendment to] the United States Constitution" because it would require the defendant to make admissions about where the crime occurred or other facts that could be used against defendant.

   In his recitation of the facts, defendant pointed out the uncertainty of the location of the offenses:

   "On November 24, 2019, Defendant arrived to pick up the alleged victims and transport them back to Vancouver, WA. TriMet video places the Defendant on a MAX train from Hillsboro through Portland, OR, before making his way to Vancouver, WA. In total, Defendant was with the

children in three separate counties and two separate states during this period."

He argued that, combined with the fact that the evidence indicated that he resided in Multnomah County, that uncertainty meant that venue was not proper in Washington County:

> "For the State to prove Washington County is the proper venue, they must show either the act or result elements of the crimes occurred in Washington County. The investigations by Hillsboro Police do not definitively answer the question of where the alleged conduct took place, nor could they determine when the children were injured. Because the State cannot definitively say where the elements of the crime occurred, they cannot prove they occurred in Washington County."

The state filed an additional response to defendant's reply. In the introduction, it succinctly summarized its position:

> "The State concedes the location of the crime cannot be readily determined. Per ORS 131.325, when the location of a crime committed within the state or a statute that governs conduct outside the state is violated and the location cannot be determined, the proper venue is the one in which the Defendant resides, or if the defendant has no fixed residence in this state, the trial can be held in the county in which the defendant is apprehended or to which the defendant is extradited. The Defendant is a resident of Washington County, or does not have a fixed residence, as such Washington County is the proper venue."

The state noted that defendant "took the boys on a train at 5:30 pm *** from Washington County, through Multnomah County, and up into Washington State," arriving at their home in Washington State around 9:00 p.m. It asserted that the evidence showed that the victim's injuries "occurred sometime after 5:30 pm and before [defendant and the children] arrived at the victim's home at 9 pm." It concluded, "The State will be unable to prove the exact location where or the exact time the injuries were delivered."

At the hearing on defendant's motion, defense counsel began by stating "agreements or stipulations" that the parties had made, including that "the state is conceding

that they cannot prove where the incidents in this case occurred." The prosecutor agreed: "We are in agreement that we will not be able to prove venue to you. I'm going to be calling Detective Tobby Cook, the lead detective in this case, to generally put on the record * * * the three locations that we believe this could have happened in."

The court explained its understanding of what was at issue:

"Because the way I see this case and the way the argument's going to come down to is—and it seems like it's not contested as far as purposes of argument is concerned—that we're dealing with at least three separate locations, meaning Washington County, Multnomah County, and then up to Vancouver, Washington[.]

"And it's not really a contested issue that he was in each of those three areas at least at some point during those times and that the argument by the defense of why a venue would be more proper somewhere else—maybe Multnomah County, but definitely not Washington County according to the defense, that's why they did a motion to dismiss—is that the state is not going to be able to prove at trial, at least beyond a reasonable doubt or maybe by a preponderance—we'll get to that later—but where the act, the alleged act or acts occurred.

"Was it in Washington County? Was it in Multnomah County or was it in the State of Washington during this period of time? Maybe it was all three, maybe it was just one, maybe it was in Washington County. And then why [*sic*: how] do we pick the correct venue?"

The state presented evidence from the detective that conformed to the parties' summaries: Defendant and the victim boarded a MAX train in Hillsboro, in Washington County, around 5:30 p.m., traveled through Multnomah County, and arrived at the victim's home in Clark County, Washington around 9:00 p.m. The detective testified that his investigation indicated that the victim could have been injured on the MAX train or off the MAX train and in any of those three counties.

In closing, the state reiterated that, not only was it conceding that the location of the crime could not readily be determined for purposes of venue under ORS 131.325, but

that, at trial, it would not be able to prove where the crime took place:

> "[O]bviously the state concedes and we have both stipulated that we're not going to be able to prove *** where exactly this assault took place. This could have taken place in the County of Washington. It could have taken place in Multnomah County. It could have taken place as they were passing through multiple counties on a train. It could have taken place up in Clark County."

However, it noted that that lack of proof was not fatal as a matter of determining venue:

> "Fortunately, venue is not a material issue and does not need to be established to a jury. As Your Honor knows, *Mills* says that it needs to be resolved pretrial in an evidentiary hearing such as this one, and that the entire reason for the venue requirement is to protect the defendant from hardship and inconvenience in the place of his trial, meaning it doesn't give him a right to not be tried at all. It simply gives him a right to a convenient location for a trial so that he's not being dragged all over the state of Oregon."

The trial court again agreed that the state had not proved, and could not prove, where the offense had taken place. It held that a motion to dismiss for lack of venue was not proper, and, consequently, it treated the motion to dismiss as a motion for a change of venue. It held that, under ORS 131.325, venue was proper in Washington County because defendant had a "fixed residence" in Hillsboro. Accordingly, it denied the motion.

As explained above, defendant appeals, asserting that the evidence adduced at the hearing, coupled with the state's variously characterized agreement, stipulation, or concession that it would not be able to prove where the offenses took place, demonstrated that Oregon courts lack the judicial power to adjudicate these offenses.

## II.   TERRITORIAL JURISDICTION GENERALLY

"Under the common law, the exclusive grounding of state jurisdiction is the territorial principle: a state has power to make conduct or the result of conduct a crime only if the conduct takes place or the result happens within its

territorial limits." Wayne R. LaFave, Jerold H. Israel *et al.*, 4 *Criminal Procedure* § 16.4(c) (4th ed 2022) (internal footnotes omitted). "Conversely, there can be no territorial jurisdiction where conduct and its results both occur outside the state's territory." *Id.*; *see also, e.g.*, *State v. Smith*, 421 NW 2d 315, 318 (Minn 1988) ("The theory of jurisdiction to hear criminal cases has its roots in the common law and has been carried forward in the Constitutions of this state and the United States. From its common law roots, criminal jurisdiction has been premised on the concept of territorialism. Jurisdiction depends on where the crime was committed.").

Oregon courts have not often stated the territorial principle of jurisdiction, perhaps because it is so fundamental that stating it has not been considered necessary. However, in 1887, in connection with a larceny prosecution, the Oregon Supreme Court held, "'Our courts, indeed, have no occasion, neither have they jurisdiction, to try prisoners for larcenies committed abroad, against the laws of foreign governments.'" *State v. Barnett*, 15 Or 77, 80, 14 P 737 (1887) (quoting Joel Prentiss Bishop, *Commentaries on the Criminal Law* § 138 (1858)).

Despite the lack of explicit statements, the concept of territorial jurisdiction undergirds the analysis in many Oregon cases. In three early cases, the Supreme Court explained that Oregon courts have jurisdiction over various theft-related offenses notwithstanding that some of the conduct giving rise to the offenses occurred in other jurisdictions; when some combination of conduct and results of the crime occurred in Oregon, that was enough to establish territorial jurisdiction in Oregon.[2] *State v. Johnson*, 2 Or 115, 116 (1864) (holding that larceny is a continuing offense, allowing conviction based on continued possession of stolen property in Oregon where taking occurred out of state; disagreeing with states holding "that the offense would not continue if the original taking was without the State, as the offense would be beyond the jurisdiction of their courts");

---

[2] As explained below, the requirements for territorial jurisdiction are now codified at ORS 131.205 to 131.235. However, as explained in the text, since before statehood, Oregon courts have recognized that their jurisdiction over criminal cases is limited by a relationship between the criminal acts and Oregon's geographic boundaries.

*Barnett*, 15 Or at 80 ("The offender, who has obtained a felonious possession without the state, cannot bring the property stolen or embezzled within the state, with the intent to appropriate or convert it to his own use, without violating the laws of this jurisdiction, and rendering him liable to its punishments."); *State v. Chew Muck You*, 20 Or 215, 221, 25 P 355 (1890) (offense "was within the jurisdiction of the [Oregon] court which tried and convicted" the defendant because one of the conduct elements took place in Oregon).

Later cases employ similar reasoning. *See, e.g.*, *State v. Olson*, 91 Or App 290, 292, 754 P2d 626 (1988) (rejecting the defendant's argument that "the trial court should have dismissed the [theft charge] for lack of jurisdiction, because no element of the crime occurred in Oregon," because the defendant had obtained the victim's money in Oregon by having the victim transfer it to a location in Oregon).

A leading United States Supreme Court case addressing the outer limits of territorial jurisdiction also arose in Oregon. In 1909, the United States Supreme Court held that the judicial power of the State of Oregon did not extend to convicting a fisherman on the Columbia River for violating Oregon law when he was fishing legally under Washington law within the territorial boundaries of Washington. *Nielsen v. State of Oregon*, 212 US 315, 29 S Ct 383, 53 L Ed 528 (1909). That was true notwithstanding the fact that Congress had granted the two states "concurrent jurisdiction" over the area where he was fishing. *Id.* at 321. The Court noted that the purpose of the grant of concurrent jurisdiction was to avoid problems with the exercise of territorial jurisdiction that could arise because the precise location of the boundary between Oregon and Washington was uncertain:

> "Undoubtedly one purpose, perhaps the primary purpose, in the grant of concurrent jurisdiction, was to avoid any nice question as to whether a criminal act sought to be prosecuted was committed on one side or the other of the exact boundary in the channel, that boundary sometimes changing by reason of the shifting of the channel."

*Id.* at 320.

Nevertheless, the Court held, without extended explanation, that, notwithstanding the congressional grant to Oregon of jurisdiction outside its boundaries (to the northern edge of the Columbia), traditional conceptions of territorial jurisdiction resolved the case: "[F]or an act done within the territorial limits of the state of Washington, under authority and license from that state, one cannot be prosecuted and punished by the state of Oregon." *Id.*; *see also State v. Alexander*, 44 Or App 557, 560, 607 P2d 181, *aff'd*, 289 Or 743, 617 P2d 1376 (1980) ("We do not know whether the offenses occurred within the State of Washington or the State of Oregon, but only that they occurred on the Columbia River, which forms the boundary between the two states. In the absence of an overriding federal act curing the problem, only the state in which the offenses occurred would have jurisdiction to prosecute the offender.").

The Court has not clearly articulated what federal law, exactly, is the source of the territorial limits on the jurisdiction of state courts. However, we, along with many other courts, have noted that there is a due process component to those limits. *Estate of Michelle Schwarz v. Philip Morris Inc.*, 206 Or App 20, 52, 135 P3d 409 (2006), *aff'd*, 348 Or 442, 235 P3d 668, *adh'd to on recons*, 349 Or 521, 246 P3d 479 (2010) (The United States Supreme Court's concern in cases regarding punitive damages "is that when a state punishes a defendant for harm caused in another state—in contrast to using evidence of actions in other states to show the reprehensibility of the defendant's actions that affected people within the state—it acts outside its territorial jurisdiction. A state has an interest in protecting its own consumers and its own economy; however, a state does not have a valid interest under the Due Process Clause in punishing a defendant for harm that is caused and occurs outside its jurisdiction."); *see also, e.g.*, *State v. Sumulikoski*, 221 NJ 93, 109, 110 A3d 856, 866 (2015) ("The extraterritorial application of state criminal law is subject to due process analysis.").

Oregon's territorial jurisdiction is now defined by statute. Although the statutory grant of territorial jurisdiction expands its limits somewhat beyond the traditional

scope of territorial jurisdiction allowed at common law, the statutes are still organized around the fundamental point that Oregon courts' jurisdiction over criminal offenses is limited by Oregon's territorial boundaries. As relevant here, ORS 131.215(1) provides that "a person is subject to prosecution under the laws of this state for an offense that the person commits by the conduct of the person * * * if * * * [e]ither the conduct that is an element of the offense or the result that is an element occurs within this state."[3] ORS 131.205 defines "this state" as "the land and water and the airspace above the land and water with respect to which the State of Oregon has legislative jurisdiction."

### III.   SUBJECT MATTER JURISDICTION AND PRESERVATION-RELATED ISSUES

A.   *Territorial Jurisdiction is a Type of Subject Matter Jurisdiction*

With that background, we arrive at the first issue that the parties dispute: whether territorial jurisdiction is a type of subject matter jurisdiction. Defendant contends that it is, with the consequence that it may be raised for the first time on appeal. *State v. Webb*, 324 Or 380, 382-83, 927 P2d 79 (1996) ("Lack of subject matter jurisdiction properly may be raised for the first time on appeal." (Internal quotation marks omitted.)). Defendant argues that territorial jurisdiction limits the scope of Oregon courts' power to adjudicate criminal cases.

---

[3] ORS 131.215(2) to (6) address situations that may not qualify for territorial jurisdiction under ORS 131.215(1) but nevertheless have some connection to Oregon that justifies territorial jurisdiction. Related statutes also provide for exceptions to ORS 131.215(1) when certain kinds of results are at issue (including those that risk conflict with the law of the place where the result takes place), ORS 131.225, and provide special rules for criminal homicide, ORS 131.235, including a rule that, "[i]f the body, or a part thereof, of a criminal homicide victim is found within this state, it shall be prima facie evidence that the result occurred within this state," ORS 131.235(2). *See generally Strasheim v. Daily*, 221 US 280, 285, 31 S Ct 558, 55 L Ed 735 (1911) ("Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power.").

Neither party contends that Oregon could have territorial jurisdiction over this case under any provision of ORS 131.215 other than ORS 131.215(1). Likewise, no one contends that any other provision of ORS 131.215 to 131.235 applies. Like the parties, we do not perceive that any of those provisions apply.

The state advances several arguments in response. First, it appears to deny that the territorial principle of jurisdiction exists; it contends that Article VII (Amended), section 9, of the Oregon Constitution grants Oregon courts subject matter jurisdiction to hear all criminal cases, regardless of where the offense takes place. We disagree. Although the permissible outer limits of a state's territorial jurisdiction are not entirely clear—and, by statute, many states, including Oregon, have defined their territorial jurisdiction more broadly than the common law would have allowed—it is beyond reasonable dispute that Oregon courts' power to adjudicate criminal offenses is limited to offenses committed within Oregon's territorial jurisdiction. *Barnett*, 15 Or at 80 ("Our courts, indeed, have no occasion, neither have they jurisdiction, to try prisoners for larcenies committed abroad, against the laws of foreign governments."); ORS 131.215 (imposing territory-based limits on the offenses for which "a person is subject to prosecution under the laws of this state"); *see Nielsen*, 212 US at 321 (rejecting the Oregon Supreme Court's attempt to convict a defendant for conduct allowed under Washington law that took place within Washington's territorial boundaries, notwithstanding a congressional grant of concurrent jurisdiction over the location of the conduct). Moreover, although we need not delve into this question here, it appears to us extremely likely that, in enacting Article VII (Original) and Article VII (Amended) of the Oregon Constitution, the framers and the voters, respectively, intended Oregon courts' power to be limited by the principle of territorial jurisdiction.

The state next contends that "territorial jurisdiction is more like personal jurisdiction than it is like subject matter jurisdiction." It contends that territorial jurisdiction cannot be a form of subject matter jurisdiction because territorial jurisdiction is, as the state puts it, "a fact-specific limit on a court's authority over a particular case," whereas subject matter jurisdiction refers to "the scope of proceedings that a court may hear and over which the court may exercise judicial power." *Dept. of Human Services v. C. M. H.*, 368 Or 96, 108, 486 P3d 772 (2021). The state notes that, in *C. M. H.*, the court distinguished between subject matter jurisdiction and other concepts that are sometimes referred

to as "jurisdiction," which "focus more narrowly on a court's authority to take *particular action* in a case that comes within the scope of the court's subject matter jurisdiction." *Id.* at 109 (emphasis in original).

We conclude that territorial jurisdiction is a type of subject matter jurisdiction. It is difficult to think of a principle that more clearly addresses "the scope of proceedings that a court may hear and over which the court may exercise judicial power," *C. M. H.*, 368 Or at 108, than the principle that a state's "power to make conduct or the result of conduct a crime," and thus subject to prosecution under the state's laws, is limited by the state's territorial boundaries. LaFave, *et al.*, 4 *Criminal Procedure* § 16.4(c); *see also id.* § 16.1(a) (describing territorial jurisdiction as "the jurisdictional limits that restrict by reference to the geographical locus of the offense the authority of the judiciary to apply the laws of the particular government (national, state, or municipality) of which it is a part").

ORS 131.215 limits the scope of criminal proceedings over which Oregon courts may exercise judicial power: "[A] person is subject to prosecution under the laws of this state for an offense" only if the offense meets the criteria in one of the six subsections that follow. If the offense is not one that qualifies under at least one of the subsections, no person is subject to prosecution for that offense under the laws of this state. In that case, prosecution for that offense is beyond the scope of proceedings that Oregon courts may hear.

Subject matter jurisdiction "exists when the constitution or the legislature or the [common] law has told this court to do something about this kind of dispute." *School Dist. No. 1, Mult. Co. v. Nilsen*, 262 Or 559, 566, 499 P2d 1309 (1972) (internal quotation marks omitted; uppercase modified). The legislature has told Oregon courts to do something about prosecutions for offenses that meet the requirements of ORS 131.215. And—in accordance with federal law—by implication, it has prohibited Oregon courts from doing anything about offenses that do not meet those requirements. *See also Nilsen*, 212 US at 321 (Oregon may not prosecute

an Oregon offense where the acts and results took place in Washington and were legal there).

Thus, territorial jurisdiction is a type of subject matter jurisdiction. LaFave, *et al.*, 4 *Criminal Procedure* § 16.4(a) n 2 ("Since territorial jurisdictional limits operate to restrict the subject matter over which the court can exercise authority, they are treated procedurally as presenting issues of subject matter jurisdiction."); *see also, e.g.*, *People v. Simon*, 25 Cal 4th 1082, 1096, 25 P3d 598, 608 (2001) (noting that venue "does *not* involve a question of 'fundamental' or 'subject matter' jurisdiction over a proceeding"; "[i]f the crime is one over which California can and does exercise its legislative jurisdiction because it was committed in whole or in part within the state's territorial borders, California courts have jurisdiction to try the defendant" (emphasis in original; some internal quotation marks omitted)); *State v. Taylor*, 238 SW3d 145, 149 (Mo 2007) ("Jurisdictional doctrine prevents courts from holding trials when the crime at issue occurred out of state; a state court lacks the authority to enforce criminal law unless the conduct, or some substantial portion of it, occurred within the state."); *Smith v. State*, 116 Md App 43, 52-53, 695 A2d 575, 580 (1997) (territorial jurisdiction is subject matter jurisdiction and may be raised, by a litigant or by a court *sua sponte*, at any time). Defendant was not required to raise the issue of territorial jurisdiction below before raising it on appeal. *C. M. H.*, 368 Or at 109; *Webb*, 324 Or at 382.

B.  *Invited Error, Waiver, and Concession Do Not Prevent Review, and Defendant Did Not Stipulate That the Offenses Were Committed in Oregon*

1.  State v. Walsh

The state argues that the outcome in this case is controlled by *State v. Walsh*, 288 Or App 278, 406 P3d 123 (2017), *rev den*, 362 Or 545, *cert den*, 139 S Ct 158 (2018), in which, on appeal, we rejected a defendant's newly raised argument about *venue* under ORS 131.325 because it was not preserved. ORS 131.325 provides as follows:

"If an offense is committed within the state and it cannot readily be determined within which county the commission

took place, or a statute that governs conduct outside the state is violated, trial may be held in the county in which the defendant resides, or if the defendant has no fixed residence in this state, in the county in which the defendant is apprehended or to which the defendant is extradited."

In *Walsh*, before the trial court, the defendant had acknowledged uncertainty about whether the offense had taken place in Oregon at all but had argued that venue was proper in Crook County, Oregon, not Washington County (the place of trial) because the offense had likely taken place in Crook County. 288 Or App at 280-81; *see* ORS 131.305(1) ("Except as otherwise provided in ORS 131.305 to 131.415, criminal actions shall be commenced and tried in the county in which the conduct that constitutes the offense or a result that is an element of the offense occurred."). That is, the defendant had argued that it could readily be determined that the crime had taken place in Crook County, so that was where venue was appropriate. *Walsh*, 288 Or App at 280-81.

On appeal, the defendant made a different argument, though it still went to venue: The defendant contended "that the trial court erred because the state failed to establish that the [conduct took place] in Oregon, which ORS 131.325 required the state to establish for ORS 131.325 to apply and permit venue to be established in Washington County." *Id.* at 281. We rejected that argument as unpreserved, explaining that the new argument "conflicts with the argument that he made below." *Id.* at 282.

In a footnote in *Walsh*, we noted that, before the trial court, the defendant had raised a territorial jurisdiction argument, but that that argument was not renewed on appeal: "We note that defendant moved at trial for a judgment of acquittal on the charges related to the photograph on the ground that the state had failed to prove that the photograph had been taken in Oregon and that Oregon therefore lacked jurisdiction over those crimes. *Defendant has not assigned error on appeal to the court's denial of that motion.*" *Id.* at 282 n 1 (emphasis added). For that reason, we did not address territorial jurisdiction in that case. In light of our conclusion in this opinion that territorial jurisdiction

is a type of subject matter jurisdiction, the issue could have been raised *sua sponte*, *Weatherspoon v. Allstate Ins. Co.*, 193 Or App 330, 333, 89 P3d 1277, *rev den*, 327 Or 227 (2004) ("[S]ubject matter jurisdiction is never waived and can be raised by any party or by the court *sua sponte* at any stage of the proceedings."), but was not.

Our holding in *Walsh* has no application here because defendant's appellate argument is not about venue. Instead, in this case, defendant argues on appeal that the court lacked territorial jurisdiction because the state's evidence and concessions, and the court's findings, established that the state could not prove that the crime took place in Oregon. As we have explained, that argument implicates the court's subject matter jurisdiction, which, unlike arguments about venue, including the one that we addressed in *Walsh*, is not subject to the preservation requirement.

2. *Waiver, Concession, and Invited Error*

The state also argues that defendant invited the error or conceded, as a legal matter, that the court had subject matter jurisdiction when he argued, in response to the state's contention that he had to identify an appropriate venue, that, if venue was proper anywhere, it was in Multnomah County because that was more likely the county where defendant resided. *See* ORS 131.325 ("If an offense is committed within the state and it cannot readily be determined within which county the commission took place *** trial may be held in the county in which the defendant resides[.]"). We reject those arguments. Because territorial jurisdiction is subject matter jurisdiction, neither consent, nor waiver, nor invited error prevents us from addressing it on appeal. *Chester and Chester*, 172 Or App 462, 469, 18 P3d 1111 (2001) (rejecting wife's contention that "husband either consented to subject matter jurisdiction by the trial court, waived his right to contest subject matter jurisdiction, or is otherwise estopped from asserting lack of subject matter jurisdiction due to principles of invited error"; explaining that "[w]e consider jurisdictional issues regardless of when they are presented," "[j]urisdiction cannot be conferred by the parties by consent, nor can the want

of jurisdiction be remedied by waiver, or by estoppel," and "[l]ikewise, subject matter jurisdiction is not susceptible to the principle of invited error" (internal quotation marks omitted)).

### 3. *Stipulation*

We do agree with the state's implicit premise that, if defendant had stipulated to *facts* showing that the offenses were ones over which the court had subject matter jurisdiction—in this case, the relevant fact would be that the offenses or the victim's injuries took place in Oregon—then that factual agreement could have given the trial court subject matter jurisdiction. *See State v. Porter*, 202 Or App 622, 627, 123 P3d 325 (2005) (when a party makes a stipulation, which is a statement made "for the purpose of dispensing with the need for proof," the stipulated fact is "conclusively proven and can be withdrawn only for fraud, mutual mistake or the actual absence of consent" (internal citation omitted)). However, we disagree with the state that, by arguing that, if anywhere, venue might be proper in Multnomah County under ORS 131.325, defendant stipulated to the fact that the offenses occurred in Oregon.

ORS 131.325 applies only when "an offense is committed within the state." *See* 326 Or App at 77-78 (setting out text of ORS 131.325). Consequently, in the state's view, when defendant failed to take issue with the state's premise that ORS 131.325 applied, he agreed, as a factual matter, that the offenses were committed in Oregon. That argument fails for two reasons. First, as noted, to bind itself to a fact, a party must make a statement "for the purpose of dispensing with the need for proof." *Porter*, 202 Or App at 627. None of defendant's arguments involved any such statements; to the contrary, as we will discuss further below, the state stipulated that the location of the offenses was *not* identifiable, including whether they took place in Oregon or Washington. As further evidence that defendant did not intend to stipulate to any facts, we note that he argued that it would violate his rights under Article I, section 12, and the Fifth Amendment to be required to suggest a proper venue for the trial. Defendant did not stipulate that the offenses took place in Oregon.

Second, it is clear from the discussion at the hearing that the parties did not recognize that ORS 131.325 applies only to offenses within Oregon's territorial jurisdiction. For example, in the course of summarizing why venue was proper in Washington County under ORS 131.325, the state noted expressly that "[t]his could have taken place in the County of Washington. It could have taken place in Multnomah County. It could have taken place as they were passing through multiple counties on a train. *It could have taken place up in Clark County*." (Emphasis added.) No one—not the state, not the court, not defendant—recognized that the fact that the state could not prove where the offenses or the results took place (and the offense did not fall under a statute governing conduct outside of Oregon) meant that ORS 131.325 did not apply because the offenses could not be shown to have been "committed within the state" or that "a statute that governs conduct outside the state [was] violated." Although that failure to recognize the limitations of ORS 131.325 might pose a problem for defendant if preservation were required, it does not demonstrate that he intended to stipulate, as a factual matter, that the offenses took place in Oregon.

## IV.   ALLEGATIONS AND PROOF
## OF TERRITORIAL JURISDICTION

Having concluded that territorial jurisdiction is a type of subject matter jurisdiction and, thus, does not require preservation and that defendant's argument is properly before us on appeal, we turn to the merits. Defendant contends that the court erred because, by the time it denied his motion to dismiss, the state had presented its evidence of the location of the offenses, which showed that the state could not prove that the offenses took place in Oregon, and had stipulated that its case could not and would not include proof that the offenses were committed in Oregon.

The state responds with two final arguments: First, it contends, the court had subject matter jurisdiction because the indictment alleged that the offenses took place in Oregon. Second, and alternatively, it argues that, if we conclude that, in order to demonstrate subject matter jurisdiction, the state had to actually prove that the offenses took

place in Oregon, we should remand for the state to put on that proof. As explained below, we reject those arguments.

We begin with the state's argument that, in a criminal case, once the state alleges in a charging instrument that an offense was committed within Oregon's territorial jurisdiction, the question of where the crime occurred is a simple matter of proof that does not affect the court's subject matter jurisdiction. In the state's view, a defendant may move for a judgment of acquittal on the ground that the offense was not committed within Oregon's territorial jurisdiction, but the allegation is all that is necessary to conclusively establish the court's power to act.

We agree with the state to the extent that, under ordinary circumstances, filing a charging instrument properly alleging that an offense took place within Oregon's territorial jurisdiction authorizes the court to hold a trial or some other proceeding to determine the truth of those allegations. *See generally Clawson v. Prouty*, 215 Or 244, 249, 333 P2d 1104 (1959) (a court "necessarily has jurisdiction" to determine its own jurisdiction (internal quotation marks omitted)). However, considering the nature and significance of territorial jurisdiction, we disagree that the filing of the charging instrument can conclusively resolve the question of Oregon courts' subject matter jurisdiction over an offense.

As explained above, territorial jurisdiction is a limit on the judicial power of the State of Oregon. The origins of that limitation are in the common law, and the doctrine is further rooted in federal law, including due process, and in proper regard for the relationship between state governments. *Nielsen*, 212 US 315; *Estate of Michelle Schwarz*, 206 Or App at 52 (to permit Oregon courts to act extraterritorially in the context of punitive damages "would offend the principles of federalism on which Due Process is based"); *see also, e.g.*, *Sumulikoski*, 221 NJ at 109, 110 A3d at 856 (territorial jurisdiction implicates due process); *State v. Baldwin*, 305 A2d 555, 560-61 (Me 1973) (explaining that, because state courts need not give full faith and credit to another state court's determination of jurisdiction, allowing proof of territorial jurisdiction by anything less than the highest standard of proof increases the risk that a defendant who

commits a crime near the border of two states may stand trial twice or even be convicted twice—once in each of the two states—for the same crime, without double jeopardy protections). Under the state's proposed approach, Oregon courts would conclusively have territorial jurisdiction to adjudicate any case in which an offense is alleged to have an adequate connection to Oregon to bring it within Oregon's territorial jurisdiction—regardless of what facts are ultimately adduced on that topic. That approach is inconsistent with the nature of the limitation on Oregon's judicial power that territorial jurisdiction represents.

Further, our case law indicates that, when a criminal defendant challenges the power of Oregon courts to adjudicate an offense, the state bears the burden to prove—not just allege—that the court has subject matter jurisdiction. In *State v. Hill*, 277 Or App 751, 373 P3d 162, *rev den*, 360 Or 568 (2016), we considered an analogous question regarding subject matter jurisdiction over certain offenses that take place in Indian country, as that area is defined by Congress. In response to the defendant's argument that the court had erred in entering his convictions without first finding that he was non-Indian—which was necessary for the court to have subject matter jurisdiction—we concluded that "the burden of *proving* jurisdictional facts in Oregon criminal cases ultimately lies with the state." *Id*. at 766 (emphasis added). Because the issue had not been litigated below, we concluded, "we cannot determine whether the trial court had subject matter jurisdiction," and, accordingly, vacated the defendant's convictions and remanded for the trial court to take evidence on the defendant's non-Indian status. *Id*. at 763-64. Under our holding in *Hill*, in a criminal case, the state bears the burden of proving—not just alleging— facts establishing the court's subject matter jurisdiction.

We conclude that territorial jurisdiction cannot be conferred by a charging instrument. That is so notwithstanding the Supreme Court's recent holding that "the allegations and the pleadings [can] be sufficient to bring a case within the scope of a court's subject matter jurisdiction." *C. M. H.*, 368 Or at 116-17 (citing cases addressing district court jurisdiction of forcible entry and detainer actions,

subject matter jurisdiction of probate courts, and equity jurisdiction, and holding that the rule applied to ORS 419B.100, which confers jurisdiction on juvenile courts). Critically, neither *C. M. H.* nor any of the cases it cited involved the question of the power of the State of Oregon as a whole to address the subject matter of the case; they all involved questions of which court, among various Oregon courts, was the proper court to hear the case. Further, none of the cases that the court cited involved a criminal proceeding. As a consequence of both of those points, none of those cases implicated federal law or constitutional rights of criminal defendants. By contrast, as established by the United States Supreme Court, territorial jurisdiction limits states' power to prosecute crimes, *Nielsen*, 212 US at 321.

Finally, we note that nearly all the state courts that have considered territorial jurisdiction in criminal cases have concluded that, in order to establish the state courts' authority to adjudicate an offense, the state must prove territorial jurisdiction either beyond a reasonable doubt or by a preponderance of the evidence. *See, e.g.*, *State v. Willoughby*, 181 Ariz 530, 536-39, 892 P2d 1319, 1325-26 (Ariz 1995) (concluding that the majority view requires proof of territorial jurisdiction beyond a reasonable doubt, rather than a preponderance of the evidence, and adopting that rule; collecting cases).[4]

---

[4] We have found a single out-of-state case stating, without analysis, that an indictment can confer territorial jurisdiction. *State v. Sanders*, 2016 SD 32, ¶ 5, 878 NW 2d 105, 107 (2016). That case is not persuasive for two reasons. First, it appears that the court did not need to address the sufficiency of the indictment, alone, to establish territorial jurisdiction, because the defendant had admitted to all of the facts in it, including that the offense had taken place in South Dakota, when he pleaded guilty. *Id.* at ¶ 4, 878 NW 2d at 107; *see also State v. Janssen*, 371 NW 2d 353, 356 (SD 1985) ("[A] plea of guilty, if voluntarily and understandably made, is conclusive as to the defendant's guilt, admitting all the facts charged ***.").

Second, we do not understand how the *Sanders* court's statement about territorial jurisdiction follows from the authorities it cites, neither of which addresses the issue. 2016 SD 32 at ¶ 5, 878 NW 2d at 107 (citing *Janssen*, 371 NW 2d at 356 (a procedural error in failing to hold a preliminary hearing does not deprive South Dakota courts of their otherwise existing authority to act on a charging instrument) and *State v. Osborn*, 155 Ind 385, 58 NE 491, 493 (1900) (the "jurisdiction" of an Indiana circuit court to adjudicate offenses that occurred in a different *county*—not a different state—is established by the indictment)); *see Mills*, 354 Or at 364 (in the nineteenth century, Indiana courts used the term "jurisdiction" to refer to what we now recognize as venue).

In this case, the state filed an indictment alleging that the offenses occurred in Oregon—in Washington County. That entitled the state to an opportunity to prove that those allegations were true. If they were, the court had subject matter jurisdiction. If they were not, the court lacked subject matter jurisdiction and had to dismiss the case. Given that understanding, all that remains is for us to consider the significance of the state's stipulation that the location of the conduct and results of the offenses could not be proved.

The state contends that, because defendant did not raise territorial jurisdiction before the trial court, the state lacked a full opportunity to prove that the offenses took place in Oregon. It argues that we should remand to give it that opportunity. By contrast, defendant asserts that, at the hearing on his motion to dismiss for lack of venue, the state had a full opportunity, and incentive, to prove the offenses' location—to show that venue was proper in Washington County under ORS 131.305(1), which states the basic rule that "criminal actions shall be commenced and tried in the county in which the conduct that constitutes the offense or a result that is an element of the offense occurred." Instead of proving in which county or state the offenses took place, the state stipulated that the offenses' location could not be proved. Given that, defendant contends, a remand is inappropriate; the state's stipulation means that it is "conclusively proven" that the location of the offenses cannot be identified among the three possibilities—Washington County, Multnomah County, and Clark County, Washington. *Porter*, 202 Or App at 627.

We agree with defendant. Although some iterations of the state's statements about what it could and could not prove were focused on proving location for purposes of venue, other statements demonstrate that the state was knowingly acknowledging that it was equally possible that the crime had taken place in any of the three counties, and that acknowledgment was for the purpose of dispensing with any further need to prove that point, either at the hearing or at trial. *See Porter*, 202 Or App at 627 ("The effect of a stipulation depends on the intention of the party that makes it; that party must knowingly make the statement for the

purpose of dispensing with the need for proof."); *accord id.* (noting that a stipulation differs from "[a] statement in opening argument that merely predicts what the evidence will show" and from "a mere casual statement by one party in the absence of evidence that the statement resulted from a formal agreement between the parties that a fact need not be proved").

We recognize that the state's stipulation was made in conjunction with an understanding shared by the parties and the court that, to obtain a conviction, the state did not actually have to prove the location of the crime. However, under these particular circumstances—where, in addition to making the stipulation, the state had reason to present, and *did* present, its evidence of where the offenses took place and, given that evidence, the trial court found that the state had not proved and would not be able to prove where the offenses took place—we conclude that a remand is not appropriate. By the time the court denied defendant's motion to dismiss, the record conclusively demonstrated that the offenses may have taken place in Clark County, Washington, and the state's repeated stipulation and concession demonstrated that it would be unable to prove that "[e]ither the conduct that is an element of the offense or the result that is an element" occurred in Oregon. ORS 131.215(1). Given that, it could not be determined that an Oregon court possessed territorial jurisdiction over the case, and the trial court was required to dismiss the case.

Reversed.